[No. 3,451.]

## F. W. FRATT v. A. C. TOOMES.

CONSTRUCTION OF DEED.—If the owner of a Mexican grant of land makes a conveyance of a part of the same, and, in the deed, describes one boundary of the land conveyed, as running parallel with the southern line of the ranch " according to the survey of the same made by the United States Surveyor-General of said State," and, at the time the deed is delivered no survey has been made and approved by the Surveyor General, but an experimental survey had been made by the Deputy of the Surveyor-General, who had the field notes in his possession, but the grantees in the deed had no knowledge of this experimental survey, the description in the deed will be held to refer to the final survey of the ranch to be thereafter determined by the Federal authorities.

IMPLIED FINDING.—When there is no express finding upon an issue, a finding will be implied in support of the judgment, if the findings were filed before the Code of Civil Procedure took effect.

TRANSCRIPT ON APPEAL.—The party appealing, when he relies on the statute of limitations, should see that the transcript shows when the action was commenced.

APPEAL from the District Court, Second Judicial District, Tehama County.

The facts are stated in the opinion.

*J. O. Goodwin, W. C. Belcher* and *P. B. Nagle,* for Appellant.

The plaintiff relied on an inchoate Mexican grant, a decree of confirmation, and an approved survey.

These constitute only an equitable title, and though they have been held in some cases sufficient as against naked trespassers, they have never been held sufficient against a patent.

A patent for a confirmed Mexican grant takes effect by relation from the date of the presentation of the petition for confirmation to the Board of Land Commissioners. (*Moore* v. *Wilkinson,* 13 Cal. 478; *Yount* v. *Howell,* 14 Cal. 465; *Ely* v. *Frisbie,* 17 Cal. 250; *Leese* v. *Clark,* 20 Cal 387.)

*Catlin & McFarland* and *R. C. Clark,* for Respondent.

We think it needs little authority and no argument to show that the plaintiff's legal title under the elder grant must prevail in this action against the defendants, who claim under a patent founded upon a junior grant.

The patent, by the very character of the instrument itself; by the terms of the Act of Congress under which it is authorized to be issued, and by the conditions expressed upon the face of the instrument itself, is not of the least value to defendants against the plaintiff in this action. The plaintiff is one of the identical "third persons" referred to in the patent, against whom it is to have no effect whatever. (*Leese* v. *Clark,* 18 Cal. 537; *Teschemaker* v. *Thompson,* 18 Cal. 11.)

By the Court, WALLACE, C. J.:

This was an action of ejectment, and, at the trial, the

plaintiff recovered the possession of some two hundred and fifty acres of land as being a part of the Dye Ranch. The trial was had before the Court below, sitting without a jury, and findings were filed, which were as follows:

"1. The tract of land described in the complaint, and claimed by plaintiff, is part of six leagues of land known as the 'Rancho el Primer Canon, or Rio de Los Berrendos,' granted by the former Mexican Government of California, to Job F. Dye, on the 22d day of May, 1844. Said grant was a valid grant, and was confirmed to said Dye by the decree of the United States District Court for the Northern District of California, on the 23d day of July, 1855, and the appeal from said decree was vacated on the 10th of February, 1857.

"2. The final survey of said Rancho Berrendos was made under and in pursuance of the Act of Congress, dated June 14, 1860, entitled ' An Act to amend an Act entitled an Act to define and regulate the jurisdiction of the District Courts of the United States in California, in regard to the survey and location of confirmed private land claims;' said survey is known as the ' Tracy Survey,' having been made in March, 1861, under instructions of United States Surveyor-General, J. W. Mandeville, by his deputy, C. C. Tracy, and was on the 5th day of April, 1861, by the decree of said United States District Court, approved as the final survey of said Rancho Berrendos.

"3. That the southern boundary line of said Rancho Berrendos, according to said Tracy survey, starts from the mouth of Antelope creek, where said creek empties into the Sacramento river, and runs from thence north forty-eight degrees, fifteen minutes east, so as to embrace within the said Rancho Berrendos only 235:20 acres of the demanded premises.

"4. The plaintiff, before the first day of October, 1866, by good and sufficient deeds of conveyance, became the grantee and owner of all the right, title and interest of said Job F. Dye, in and to the lands claimed in the complaint.

"5. The defendants entered upon the lands claimed in

the complaint on the first day of October, 1866, and held the same adversely to him from that time to the commencement of this action, and used and occupied the same during that time, a period of one year, five and one half months.

" 6. The rents and profits of 205 acres of said land lying within the bounds of said Tracy survey, and being a portion of the demanded premises, were worth at the rate of $2 per acre per annum, amounting to $598.

" 7. On the 20th day of December, 1844, the former Mexican Government of California granted to the defendant, A. G. Toomes, five leagues of land lying on the south side of, and adjoining the tract granted as aforesaid, to said Job F. Dye. The grant to Toomes was known by the name of Rancho de los Molinos.

" 8. On the 3d day of December, 1858, a patent, in the form authorized by the Act of Congress of March 3d, 1851, was issued to said A. G. Toomes, which said patent embraced within its boundaries all the lands claimed by the plaintiff in the complaint."

Judgment being rendered for plaintiff in accordance with the findings, the defendants moved for a new trial, which was denied, and this appeal is taken from the judgment and order denying the motion for a new trial. The premises recovered by the plaintiff are claimed by him as being included in the rancho "Rio de los Berrendos," otherwise called the "Antelope Ranch" or "Dye Ranch," which was granted to Francisco Dye by Governor Micheltoreno, May 22d, 1844, and was designated as "the land known by the name of Rio de los Berrendos, adjoining the margins of the river Sacramento, the boundaries commencing at the mouth of the river Berrendos, thence north three leagues in length and two in breadth—in all, six square leagues."

The defendants rely upon a patent of the United States issued to the defendant Toomes in the year 1858, founded upon a grant issued to Toomes in December, 1844, by Governor Micheltoreno, granting to him a tract called "Rio de los Molinos," "commencing the boundaries at the arroyo de los Berrendos, and running south five square leagues."

In his petition for the grant, Toomes describes the tract solicited as follow: "The land situated on the banks of the river Sacramento, which place is vacant, and is of the extent of five square leagues, and its boundaries are, on the north, the 'Rancho of Dye' (etc.,) as appears by the accompanying map." The diseno accompanying the petition of Toomes plainly shows the position of the arroyo de los Berrendos, or Antelope creek, emptying into the Sacramento river—the mouth of which creek, it must be remembered, had already been designated in the preceding month of May, in the Dye grant, as the point from which a line extended eastwardly the distance of two leagues, formed the southern boundary of the Dye Ranch, and the southern boundary of the Dye Ranch is in that manner delineated on the diseno of Toomes; the territory immediately to the north of the line drawn east from the mouth of Antelope creek being thereon designated "Rancho de Dye." Looking at the grants of the Dye and Toomes Ranchos, and the disenos respectively attached, and which are each drawn with remarkable precision, it is plainly to be seen that the premises recovered in this action lay to the northward of a line drawn east from the mouth of Antelope creek, and are therefore clearly within the boundaries of the Dye grant, as made by Governor Micheltoreno. But irrespective of this, the premises recovered are also included within the boundaries of the Dye grant, as those boundaries were fixed by the survey of that grant, finally approved in April, 1861, by the District Court of the United States, proceeding under the Act of Congress of June 14th, 1860.

2. The defendants claim, however, that the plaintiff is estopped in this action to set up or rely upon the survey fixed by the decree of the District Court of the United States, because they say that the survey made in 1856 by the Surveyor-General (and upon which the patent to Toomes was issued in 1858) represents a boundary line agreed upon by Dye and the defendant Toomes, by which it was mutually stipulated between the parties that the northern line of the Molinos ranch, as subsequently delineated in the patent, should constitute the dividing line between the two

ranchos. But the finding of the Court below is against the defendants upon the question of fact, as to whether the alleged agreement was made; and upon looking into the evidence it is seen to have been substantially conflicting; and we cannot, under the rule, disturb the finding of the Court below. ·

3. It is next objected by the defendants that, even admitting that the premises recovered are to be considered as included within the boundary of the Dye grant, they are not embraced within the calls of the deed of conveyance from Dye and wife to Fratt and King, through which the plaintiff claims.

The beginning point in this deed is the mouth of the Antelope creek, at its junction with the Sacramento river; and from that point the line runs northerly, meandering with the river to a sycamore tree on its bank; the second call (omitting a reference to be noticed presently) is easterly to Antelope creek; thence up the center of the creek to a tree on its eastern bank; thence to the eastern line of the ranch; thence down the eastern line to the southeastern corner of the ranch; and thence along its southern line to the mouth of Antelope creek, the point of beginning. As there given, the deed would follow the southern line of the Dye grant, as fixed by the final survey, and would include the premises recovered; but in the second call by which the most westerly portion of the northern line is run to Antelope creek, it is mentioned as running parallel with the southern line of the ranch, " according to the survey of the same made by the United States Surveyor-General of said State." The deed bears date, and was presumptively delivered, on the 24th day of November, 1857, and the survey of the Dye ranch became final, as we have seen already, only in April, 1861. Before the delivery of the deed, however, a survey of that ranch had been made in the field by one Gray, acting under the directions of the Surveyor-General of the United States, for the time being, by which survey the southern line of the ranch was not identical with that line as appearing in the final survey referred to. If the calls of the Gray survey are to be considered as fixing the southern

line of the Dye ranch for the purpose of the conveyance to Fratt and King, then the premises recovered are not embraced in that conveyance. It should be borne in mind that, though the field notes of the Gray survey were in existence and in the possession of Gray, when the deed to Fratt and King was delivered, no plat of that survey appears to have been seen or examined by the parties to the deed at the time it was executed, and, in fact, the earliest period at which the plat is shown to have been in existence was in the year 1858, when the field notes were approved by the Surveyor-General of the United States, who had succeeded to the office after the Gray survey had been made in the field. So far as the record discloses, the Gray survey was, at the date of the delivery of the deed, a mere experimental survey; it had never been approved by the Surveyor-General, and in this view could hardly be said to be a survey made by that officer. Again: Fratt and King, the grantees in the deed of 1857, are not shown, when they received the deed, to have had knowledge that Gray had made any survey of the ranch whatever, experimental or otherwise. Under such circumstances it would certainly be difficult to suppose that the parties intended to limit the calls of the deed by reference to the fugitive field notes of Gray, then in his pocket, or at least not appearing to have been reported or recorded, so as to be referred to with reasonable, or, in fact, any certainty whatever.

The parties, we think, intended to refer to the final survey of the ranch to be thereafter determined by the Federal authorities. The description contained in the Dye grant, and a glance at the Mexican *diseno* accompanying it, present its eastern and southern line, and, in fact, all its boundaries with such conspicuous precision as to enable the parties to practically fix for themselves in advance the lines of the survey, which would of necessity thereafter be made by the authorities of the United States. The Sacramento river formed the western boundary, which was to begin at the mouth of the Antelope Creek, and extend northerly along the river, a distance of three leagues, to a point. From the two points thus fixed, the northern and southern

boundaries were to be formed by lines drawn easterly and at right angles to the general course of the river, a distance of two leagues; and the fourth or eastern line was to be drawn parallel with the general course of the river, and at the distance of two leagues from it. The eastern and southern boundaries, to which reference was made by the parties, were therefore almost, if not quite, as definite when the deed to Fratt and King was delivered, as in 1860, when the official survey became final; and we cannot, under the circumstances, infer an intention to put them aside for the field notes of the Gray survey.

4. The last point to be considered concerns the defense, based upon the Statute of Limitations. But this is readily disposed of, because the fifth finding substantially is to the effect that when the action was brought the defendants had been in possession of the premises only one year five and a half months. If it is to be said that the finding referred to fixed these periods only for the purpose of ascertaining the amount of rents and profits to be recovered, and was not a finding upon the issue raised by the plea of the statute, then there being no express finding upon the point, a finding is to be implied against the defendants in support of the judgment the plaintiff had below, for this cause was determined in the Court below, under the practice prevailing before the taking effect of the present Code of Civil Procedure; and, finally, we have at any rate no means of determining at what time this action was commenced; for in this case, as in most others which have come here upon the plea of the Statute of Limitations, the parties seem to have been careful to omit that part of the record which would have shown when the complaint was filed.

There is nothing in the other points; and the judgment and order denying a new trial are affirmed, as of October 1st, 1872.

Remittitur forthwith.

Mr. Justice RHODES did not express an opinion.