[L. A. No. 411.   Department One.—July 22, 1898.]

FLORA M. SHERMAN, Respondent, v. L. F. J. WRINKLE, Appellant.

STATE LANDS UNCOVERED BY RECESSION OF LAKE— APPLICATION BEFORE SURVEY—METES AND BOUNDS—EXCESS OF ACREAGE.—An application made in good faith and in proper form for the purchase of six hundred and forty acres of land uncovered by the recession of an inland lake, which had not been previously surveyed or sectionized, is not vitiated by an excess of acreage in the land described in the application by metes and bounds.

ID.—INTENTION OF LEGISLATURE—ACCURATE DESCRIPTION NOT REQUIRED.—It was not the intention of the legislature to require the applicant for a proper quantity of unsurveyed lands to state the precise acreage included in a description by metes and bounds in the application; but the requirement of such a description negatives the necessity of exactitude in the matter of quantity contained therein, and requires no more than an approximate estimate thereof.

ID. — GOOD FAITH OF APPLICANT— OFFICIAL SURVEY— ASCERTAINMENT OF QUANTITY.—Where the applicant is seeking in good faith to purchase no more land than the law allows, the law intends that the quantity which he is entitled to purchase shall be ascertained by the official survey to be made by the county surveyor under the authority of the surveyor general. The surveyor should exclude any excess from the survey, which is intended to constitute the basis for approval of the application.

ID.—PRELIMINARY SURVEY.—The law does not contemplate nor require a preliminary unofficial survey to be made by the applicant.

ID.—MISTAKE IN OFFICIAL SURVEY—REMISSION OF EXCESS.—A mistake of the surveyor in the official survey of the land, in including, by mistaken calculation, a small excess of land within the lines of his survey, cannot affect or defeat the right of the applicant to purchase to the limit authorized under the statute. The applicant may relinquish and abandon any claim to such excess, and in so doing, does all that he is called upon to do in the premises.

ID.—FALSITY IN APPLICATION—FINDINGS — CONCLUSION OF LAW.—A mistaken estimate of quantity in an application by metes and bounds

for six hundred and forty acres of unsurveyed lands, does not fall within the rule respecting false statements in applications for state lands; and a finding of falsity in such application, in the matter of acreage, is of an erroneous concluson of law, which is inconsistent with findings of fact establishing good faith on the part of the applicant.

APPEAL from a judgment of the Superior Court of Inyo County and from an order denying a new trial. N. D. Arnot, Judge rendering judgment. Walter A. Lamar, Judge denying new trial.

The facts are stated in the opinion of the court.

Deal, Tauszky & Wells, and William F. Herrin, for Appellant.

Cases relating to defective applications for the purchase of state lands, are inapplicable to this case. General expressions in the opinions of the courts therein are to be considered as limited to the facts then before the court. (*Grant v. Murphy*, 116 Cal. 427, 432; 58 Am. St. Rep. 188; *Norris v. Moody*, 84 Cal. 143, 149.) The excess only is rejected, and the location is invariably held good for the limit of quantity allowed by law. (*Thompson v. Spray*, 72 Cal. 528–31; *Doe v. Tyler*, 73 Cal. 21, 23; *Howeth v. Sullenger*, 113 Cal. 547; *Jupiter Min. Co. v. Bodie etc. Min. Co.*, 7 Sawy. 96; *Richmond Min. Co. v. Rose*, 114 U. S. 576; *Rose v. Richmond Min. Co.*, 17 Nev. 59, 60; *Burke v. McDonald*, 2 Idaho, 646; *Stem Winder Min. Co. v. Emma etc. Min. Co.*, 2 Idaho, 421; *Atkins v. Hendree*, 1 Idaho, 100; *Hansen v. Fletcher*, 10 Utah, 266.) Even a patent for a considerably greater quantity of land than is authorized by law is void only as to the excess. (*Pollard v. Greit*, 8 Ala. 931; *Delaware etc. Co. v. Dimock*, 47 Pa. St. 393; *Kelly v. Graham*, 9 Watts, 116; *Lakin v. Dolly*, 53 Fed. Rep. 333; *Lakin v. Roberts*, 54 Fed. Rep. 461.) A slight mistake in an official survey cannot vitiate the survey. (*Fulton v. McAfee*, 5 How. (Miss.) 751; *Walters v. Commons*, 2 Port. 38; *Spawr v. Johnson*, 49 Kan. 788.) A survey of unappropriated land by authority of a state land warrant, can only be avoided by the government for excess, and a subsequent locator cannot avoid it therefor. (*Taylor v. Brown*, 5 Cranch, 234, 249; *Cresap v. McLean*, 5 Leigh, 381; *Darrah v. Bryant*, 56 Pa. St. 69, 74;

*White v. Burnley*, 20 How. 235, 247; *Heirs of Gill v. Towler*, 3 Ohio, 209; *Holmes v. Trout*, 7 Pet. 215, 216.) Excess in description does not vitiate an application for state land as suitable for cultivation, and where one of the sections applied for was found not to be of that character, the application was defeated only as to that section. (*Fairbanks v. Lampkin*, 101 Cal. 520.) In the absence of fraud, the applicant's errors in the description of unsurveyed land are not fatal, and the official survey is intended to fix the lines with precision. (*Hinckley v. Fowler*, 43 Cal. 56.) The subsequent applicant had no right to appropriate the survey made for the prior applicant. (*Maddux v. Brown*, 91 Cal. 525.)

Leon Samuels, P. W. Forbes, and Mullany, Grant & Cushing, for Respondent.

The application of defendant was void, because it did not truly state all the facts required to be stated therein. (*Woods v. Sawtelle*, 46 Cal. 389; *McCoy v. Byrd*, 65 Cal. 92; *Millidge v. Hyde*, 67 Cal. 5; *Plummer v. Woodruff*, 72 Cal. 29.) A case of this kind involves no equitable doctrine. (*Campbell v. Coburn*, 77 Cal. 37.) Each applicant is an actor and must show that he has complied with every requirement of the statute. (*Garfield v. Wilson*, 74 Cal. 177, and cases cited; *Gilson v. Robinson*, 68 Cal. 543, and cases cited.)

VAN FLEET, J.—The controversy herein arises from conflicting applications made to the surveyor general of the state to purchase certain unsurveyed lands situated on the margin of Owen's Lake, in Inyo county, and uncovered by the receding waters of the lake, lying between the present shore or water line and the original meander line previously established by the United States government survey—the applications being made under and in pursuance of "An act regulating the sale of lands uncovered by the recession or drainage of inland lakes," etc. (Stats. 1893, 341). The features of that act material to our present consideration are:

"Section 1. Any person desiring to purchase any of the lands uncovered by the recession or drainage of the waters of inland lakes and inuring to the state by virtue of her sovereignty, . . . . shall make an application therefor to the surveyor general of

the state, which application shall be accompanied by applicant's affidavit that he is a citizen of the United States, or has declared his intention to become such, a resident of this state, of lawful age, that he desires to purchase such lands (describing the same by legal subdivisions or by metes and bounds if the legal subdivisions are unknown) under the provisions of this act; that he desires to purchase the same for his own use and benefit, and for the use and benefit of no other person or persons whomsoever, and that he has made no contract or agreement to sell the same, and that he does not own any state lands, which, together with that now sought to be purchased, exceeds six hundred and forty acres.

"Section 2. Upon the filing of said application, when the land has not been sectionized, the surveyor general shall authorize the county surveyor of the county where the whole or the greater portion of the land lies to survey the same, who shall make an actual survey thereof, at the expense of the applicant, establishing four corners to each quarter-section, and connecting the same with a United States survey: he must within thirty days file with the surveyor general a copy, under oath, of his field notes and plat, and a statement, under oath, showing whether or not the land is occupied by any actual settler."

The defendant's application and the survey in pursuance thereof were made prior to the filing of plaintiff's application, and the validity of defendant's application is the only question which demands consideration, since in the view we take, it determines the rights of the parties. That application, as found by the court and as conceded by respondent, conformed in its statements to all the requirements of the statute, both in form and substance, and, if the material statements therein were true, established defendant's prior right to purchase the land in dispute.

The land, not having been previously surveyed or sectionized, was described in defendant's application by metes and bounds. Upon survey by the county surveyor, under the authority and direction of the surveyor general, it was found that the exterior lines of the tract described in the application contained an acreage in excess of six hundred and forty, the maximum which defendant was entitled to purchase, and thereupon the surveyor, in closing his lines on the south end of the tract, excluded all

.except an area sufficient, according to his figure, to make a tract
·embracing six hundred and thirty-nine and fifty-five one hun-
dredths acres in extent, and duly returned such survey to the
office of the surveyor general.   By a computation made at the
trial, however, and admitted in evidence, it was disclosed that
the surveyor had in fact, though unintentionally, made a mis-
take in his figures, and had included within the lines of his sur-
vey a tract embracing about six hundred and forty-two acres,
whereupon defendant at once offered to and did relinquish and
abandon any claim to such excess.   The court below, while find-
ing that the defendant was not the owner of any other state
lands than those sought to be purchased, and that "when he em-
braced in his said application a tract of land containing more
than six hundred and forty acres, did so innocently, uninten-
tionally, and through a mistake as to the amount of land em-
braced within the description in his said application, and that
he did not do so knowingly, willfully, fraudulently, or with in-
tent to apply for or obtain title to more land than the law au-
thorized him to apply for or obtain title to"; "that the said
county surveyor, without the knowledge of the defendant, did
make errors in making his computations of the areas of the
several lots of lands described in the said field notes of the said
survey made by him as set forth in defendant's answer filed in
this action, and in reporting six hundred and thirty-nine and
fifty-three one hundredths acres as the total area of all the lots
of land therein described," and that defendant's application was
in all other respects true, found and concluded: "That by rea-
son of the excess of land over and above six hundred and forty
acres, applied for and described in said application No. 58 of said
defendant, and the following statement contained in the afore-
said affidavit of defendant, to wit: 'that I do not own any state
lands which, together with that now sought to be purchased,
exceed six hundred and forty acres,' was and is not true."   And
by reason of that conclusion the court gave judgment against
the defendant.

In reaching this conclusion the court below very evidently,
and as disclosed by an opinion found in the record, proceeded
upon the theory, now urged by respondent in support of the
judgment, that the statement required by the statute, that the

applicant "does not own any state land which, together with that now sought to be purchased, exceeds six hundred and forty acres," is the equivalent of requiring the statement of the fact that the tract embraced in the application contains that much land and no more; that this statement is a material one, and being found untrue in this case it vitiated defendant's application, and rendered it wholly invalid as a basis of a right to purchase, under section 3500 of the Political Code, which provides that any "false statement" contained in the affidavit there provided for "defeats the right of the applicant to purchase the land," etc. Whether this section of the Political Code may be regarded as having any application to the provisions of the act under consideration, which in no way refers to it in terms, need not be determined, for we are satisfied that the construction contended for by respondent cannot obtain. The very terms of the act refute the idea that it was the intention to require the applicant to state the precise and exact quantity of land embraced in the exterior lines of his description. No such requirement is found in the act, either in terms or by necessary implication. To the contrary, the act expressly contemplates the sale thereunder of lands which have not, at the date of application, been surveyed, and the exact extent in acreage of which cannot, therefore, in the nature of things, be the subject of definite ascertainment or knowledge at that time, by any means therein provided. And in view, doubtless of that fact, the act provides in terms for a description of the tract sought to be purchased by "metes and bounds"—a character of designation tending to negative the necessity of exactitude in the matter of quantity, or anything more than an approximate estimate thereof. The statute does intend that an applicant shall not seek or have the right in any case to purchase more than a certain limited number of acres, according to the extent of ownership, if any, of other state lands. But the fact that the description in his application may inadvertently, or by mistake, include more than the amount of land which he is entitled to purchase, is not in any way inconsistent with the idea that he is nevertheless seeking in good faith to purchase only so much as the law authorizes. The very evident contemplation of the statute is that the description, at least in the case of unsurveyed lands,

shall be such as to enable the surveyor to identify the tract to be surveyed, but that the *quantity* of land which the applicant is entitled to purchase under the facts stated in his application is to be ascertained by the official survey made under the direction and authority of the surveyor general; and that the survey is intended to constitute the basis upon which the approval of the application is to be had. Any other construction would render the act inoperative as a means of securing title to unsurveyed lands, since no applicant could venture, at the peril of forfeiting his right to purchase, to state with exact precision the number of acres embraced within a given tract.

It is said that the question of quantity may be readily determined by a preliminary unofficial survey by the applicant. But no such method is suggested or required by the act. The legislature very evidently recognized the inherent impossibility of an applicant making oath to something which, in the nature of things, he could not personally know. No one could pretend to state positively the exact acreage in a given tract even of surveyed land, unless he knew, of his own knowledge, the correctness of the surveyor's lines; and even then the area would depend upon a matter of computation, in which mistakes very frequently arise. That even surveyors make mistakes in their lines and computations, is matter of common knowledge, and is evidenced by the facts before us in this case.

The case presented is not unlike in principle that which arises under a location of a mining claim under the statutes of the United States, where it is provided that no applicant shall be entitled to a claim or location, exceeding certain fixed dimensions. It has been the uniform rule of decision in such cases that a mere mistake in including in the boundaries of the location an excess above that authorized by law does not vitiate the location. The excess only is rejected and the location held good, to the limit which the locator is permitted to purchase. (*Richmond Mining Co. v. Rose*, 114 U. S. 576; *Thompson v. Spray*, 72 Cal. 528, 531; *Doe v. Tyler*, 73 Cal. 21, 23.) And the case is not without analogy in *Fairbanks v. Lampkin*, 101 Cal. 520, where it was held that a mistake in describing all the land applied for as suitable for cultivation, whereas it was found that one legal subdivision thereof was not of that character, de-

feated the applicant's right to purchase only as to the latter portion.

Of course the mere mistake of the surveyor in including an excess of land within the lines of his survey did not affect or defeat the defendant's right to purchase to the limit authorized under the statute. (*Hinckley v. Fowler,* 43 Cal. 56.) And defendant in relinquishing and abandoning any claim to such excess did all that he was called upon to do in the premises.

Under the facts found by the court the defendant's application was clearly valid. The finding as to the falsity of that application in the particular mentioned was not a finding of fact, but an erroneous conclusion of law, not supported by the facts.

There is nothing in the line of cases relied upon by plaintiff at variance with the conclusion we have reached. Those cases all involve instances where the application was found defective as to some substantive and essential fact required to bring it within the law.

The judgment and order are reversed and the cause remanded, with directions to the court below to enter judgment upon the findings establishing the validity of defendant's application.

Harrison, J., and Garoutte, J., concurred.

A petition for a hearing in Bank having been filed, the following opinion was rendered thereon on the 20th of August, 1898:

THE COURT.—The petition for rehearing is denied. But, as our attention has been called by the petition for rehearing to the fact that the court below failed to directly find that the land in contest is not suitable for cultivation, the judgment is hereby modified by directing the court below to make a finding on that subject, and that if it finds that the land is not suitable for cultivation, then to enter judgment for defendant as directed in the opinion hereinbefore filed.