[Sac. No. 2784. In Bank.—January 4, 1921.]

PETER D. BERNHARD, Appellant, v. J. H. WALL, Respondent.

[1] SCHOOL LANDS—APPROVAL OF APPLICATION TO PURCHASE—MANDAMUS PROCEEDING—CONTINUING DEMAND UNDER SECTION 3498. POLITICAL CODE.—Under section 3498 of the Political Code, as it read in 1889, providing an unapproved application to purchase school lands, should not be considered void, although on file for more than six months, if approval thereof had been demanded by the applicant, a *mandamus* proceeding by the applicant to compel the surveyor-general to receive and file the application was in effect a continuing demand and kept the application alive.

[2] ID.—SUBSEQUENT APPLICATIONS—PENDENCY OF MANDAMUS PROCEEDING—DUTY OF SURVEYOR-GENERAL.—Where an application to purchase school lands was refused approval because of the refusal of the applicant to pay certain taxes, penalties, interest, and costs assessed against the lands while they were held under a previous application to purchase from the state, and pending a *mandamus* proceeding to compel the surveyor-general to receive and file the application, subsequent applicants, who were willing to pay such

assessments, made applications to purchase, the surveyor-general, in view of section 3414 of the Political Code, should have referred the applications to the proper superior court as involving a question of law, or presented the matter of the conflicting claims to the court having jurisdiction of the *mandamus* proceeding, instead of accepting the later applications and issuing unqualified certificates thereon to such subsequent applicants.

[3] ID.—MANDAMUS COMMANDING FILING OF PRIOR APPLICATION— PRIORITY OF PATENT OVER PATENT OF SUBSEQUENT APPLICANTS.— Where the surveyor-general refused to approve an application for the purchase of school lands because of the refusal of the applicant to pay certain taxes, penalties, interest, and costs assessed against the lands, but was commanded by a *mandamus* proceeding to receive and file such application and a patent was thereafter issued, the applicant's rights, under his patent, related back to the time when he made his application and prevailed over patents previously issued to subsequent applicants.

[4] ID.—DECREE OF FORECLOSURE—SUMMONS—DESCRIPTION OF LANDS— PRESUMPTION FROM RECITAL IN DECREE.—A decree of foreclosure of the rights to purchase school lands for failure to make the deferred payments was not void because of the fact that in a copy of the summons attached to the proof of publication included in the judgment-roll the lands were incorrectly described, where the original summons was not on file and the decree recited that the defendant was regularly served with process, since it will be presumed from the recital that there was a summons actually published, or actually served, which did correctly describe the lands, if any description was required.

[5] TAXATION—PURCHASE OF FORECLOSED LANDS FROM STATE—PAY- MENT OF TAXES AND PENALTIES—VOID SALE—CODE REQUIREMENT INAPPLICABLE.—The provisions of section 3788 of the Political Code that when land purchased from the state and not fully paid for has been sold to the state for delinquent taxes and a tax deed has been issued to the state, the land shall again become subject to sale, but that the applicant must pay the taxes, penalties, and costs, necessarily imply a valid sale to the state, and have no application where a deed has been made which is void on its face.

[6] ID.—NOTICE OF TIME OF TAX SALE—INSUFFICIENT PUBLICATION— VOID DEED.—Under section 3767 of the Political Code, providing that the published notice of a sale of land to the state for delinquent taxes must designate the day of sale, which must not be less than twenty-one nor more than twenty-eight days from the time of the first publication, a notice first published on a day which was more than twenty-eight days prior to the day fixed therein for the delinquent sale was insufficient to authorize the sale, and the deed based thereon was void.

[7] ID.—RECITALS IN TAX DEEDS—PRIMA FACIE EVIDENCE OF SALES AT PROPER TIMES.—Under sections 3786 and 3787 of the Political Code, tax deeds are only *prima facie* evidence that the sales on which they were founded were made at a proper time, and such *prima facie* proof is refuted by recitals in the deeds showing that the sales were made more than twenty-eight days after the first publication of the notices of the sales.

[8] ID.—TAX DEEDS—EVIDENCE FROM RECITALS—APPLICABILITY OF CODE PROVISIONS.—The phrase "such deed" contained in section 3786 of the Political Code, providing that "such deed" is primary evidence of certain facts, and in section 3787, providing that it is conclusive evidence of the regularity of all other proceedings, applies to tax deeds authorized by both sections 3785 and 3785b of the Political Code.

[9] SCHOOL LANDS—MANDAMUS PROCEEDING TO COMPEL FILING OF APPLICATION—JUDGMENT—ESTOPPEL.—A judgment in a *mandamus* proceeding commanding the surveyor-general to receive and file an application to purchase school lands without requiring the applicant to pay certain taxes, penalties, interest, and costs assessed against the lands while they were held under a previous application to purchase, operated as an estoppel against his claiming that a tax deed not pleaded in such proceeding would have been a defense thereto, since the judgment was conclusive, not only of the matters actually alleged in opposition to the writ, but also of any fact which might have been alleged and proved to show that the applicant was not entitled to the relief given by the judgment.

[10] ID.—JUDGMENT AGAINST SURVEYOR-GENERAL—CONCLUSIVE AGAINST STATE.—A judgment against the surveyor-general in a *mandamus* proceeding to compel him to receive and file an application to purchase school lands is in all respects binding and conclusive against the state to the same extent that it binds him.

[11] ID.—JUDGMENT IN MANDAMUS PROCEEDING—RELATION TO TIME OF FILING OF APPLICATION.—A judgment in a *mandamus* proceeding commanding the surveyor-general to receive and file an application to purchase school lands relates back to the beginning of the proceeding and fixes the respective rights of the parties and of the state as of that time based upon the conditions then existing.

[12] VENDOR AND VENDEE—PURCHASE FROM APPARENT RECORD OWNER —LACK OF KNOWLEDGE OF UNRECORDED TITLE—ACQUISITION OF VALID TITLE.—Where land is unoccupied and a person holds title thereto by a contract or deed which is not recorded, and a third person, in good faith and for value, buys the land from the ap-

12.   Effect of delay in recording instrument on rights of intervening purchaser without notice, note, 7 **Ann. Cas.** 317.

parent record owner thereof, he takes the title free from the prior, but undisclosed and unrecorded title of the other party.

[13] ID.—INNOCENT PURCHASER UNDER VOID DEED—RULE INAPPLICABLE.—The rule that an innocent purchaser of land for value from the apparent record owner takes title free from the prior but undisclosed and unrecorded title of another does not prevail where the party claiming to be an innocent purchaser holds under a deed or patent which is absolutely void.

[14] ID. — REJECTED APPLICATION — MANDAMUS — PURCHASE PENDING PROCEEDING—EQUITIES.—Where an application to purchase school lands was rejected by the surveyor-general because of the refusal of the applicant to pay certain taxes, penalties, interest, and costs assessed against the land while held under a previous application to purchase, the mere rejection of the offer in and of itself did not operate to withdraw the lands from sale to other applicants or to put such applicant in privity with the state so as to give him a superior equity to that of innocent purchasers of value of the lands from apparent record owners during the pendency of the *mandamus* proceeding.

[15] ID.—MANDAMUS PROCEEDING—SUBSEQUENT PATENTEES—NONREPRESENTATION BY SURVEYOR-GENERAL.—In a *mandamus* proceeding to compel the surveyor-general to receive and file an application to purchase school lands, he does not represent patentees who acquired their patents during the pendency of the *mandamus* proceedings, or those claiming under such patentees, so as to make them bound by the judgment.

[16] ID.—FAILURE TO FILE LIS PENDENS—LACK OF CONSTRUCTIVE NOTICE—SUBSEQUENT PATENTEES.—Where notice of the pendency of a *mandamus* proceeding to compel the surveyor-general to receive and file an application to purchase school lands was not filed as provided by section 409 of the Code of Civil Procedure, subsequent patentees and purchasers during the pendency of the proceeding were not charged with constructive notice thereof.

[17] VENDOR AND VENDEE — INNOCENT PURCHASER — POSSESSION OF GRANTOR—PLEADING AND EVIDENCE.—An innocent purchaser of land for value and without notice is not required to allege and prove that at the time of the purchase his grantor was in possession of the land.

APPEAL from a judgment of the Superior Court of Lassen County. H. D. Burroughs, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. E. Bolton and Pardee & Pardee for Appellant.

L. T. Hatfield, V. L. Hatfield, W. H. Hatfield, R. M. Rankin and Devlin & Devlin for Respondent.

SHAW, J.—The appeal is from the judgment.

The objects of the action, as expressed in the prayer of the complaint, were to obtain a decree declaring void certain state land patents issued to Robert M. Rankin and Thomas J. Dunlap, respectively, or, in case the patents should be held legal, to declare that defendant holds title to the lands. described therein in trust for the plaintiff and that he be compelled to convey said lands to plaintiff, and for general relief. The findings are within the issues and the principal, if not the only, points urged in support of the appeal are that the findings do not support the judgment. The facts will be stated as we proceed with the argument.

The land in controversy is the south half, the northwest quarter, and the south half of the northeast quarter of section 36, township 34 north, range 9 east, Mt. Diablo meridian, situated in Lassen County. Said section is one of the school sections granted to the state by the United States. On May 11, 1903, Peter D. Bernhard, the plaintiff, offered to the surveyor-general an application and affidavit, in due form, to purchase said land and also offered to pay the fee and make the deposit required by law on the filing of such an application. The surveyor-general refused to receive or file said application and affidavit or accept the money tendered, claiming that the land was subject to certain taxes assessed against it while it was held under a previous purchase from the state, after the purchase and before said purchaser's right became extinguished by foreclosure, and that Bernhard was required to pay the taxes, penalties, interest, and costs so assessed, as a condition of making his entry. Bernhard on the same day began an action in the superior court of Sacramento County against the surveyor-general for a writ of mandate to compel him officially to accept said fee and receive and file said application and affidavit as of the date of May 11, 1903. An alternative writ of mandate was issued in said action on May 14, 1903, and was duly served on the surveyor-general on May 15, 1903.

Notwithstanding this offer to purchase and the pendency of the action and service of the writ upon him, the surveyor-general, on May 27, 1903, accepted from Dunlap an applica-

tion and affidavit to purchase the south half of said section (Dunlap then paying the fees, the deposit, and also the taxes claimed by the surveyor-general, assessed as aforesaid), and thereafter issued a certificate of purchase, in pursuance whereof a state patent was issued to Dunlap on November 29, 1904. On May 27, 1903, Rankin also applied in like manner to purchase the remainder of the land in controversy, paying the deposit, the fee, and the taxes. His application and affidavit were accepted and in pursuance thereof a state patent was issued to him on November 29, 1904. At the time these patents were issued there had been filed in the proceeding in *mandamus* a demurrer to the amended complaint therein and said demurrer had not been disposed of by the court. Afterward, and before the present action was begun, the *mandamus* suit was decided, resulting in a final judgment commanding the surveyor-general to receive the said application of plaintiff to purchase said land, on payment of the fees and deposit provided by law, and to file the same in his office as of the eleventh day of May, 1903. The payment was made, the surveyor-general thereupon complied with the judgment, received and filed the application, and thereafter, in pursuance thereof, full payment having been made, a state patent was issued to the plaintiff purporting to convey to him the lands described in the complaint herein. This patent bears the date of August 29, 1913.

Upon the facts above stated, considered apart from the other findings of the court, it is clear that the plaintiff was entitled to the relief asked. Section 1 of the act of 1889 (Stats. 1889, p. 434) provides that applications to the surveyor-general to purchase school lands must be accompanied by a deposit of $20, and that the surveyor-general should give the applicant a receipt therefor, and that the receipt should be accepted by the county treasurer as part payment of the purchase price. Section 9 provided: ''Any number of filings on any section of land is hereby permitted and allowed under the provisions of this act. Should the first filing be abandoned by the applicant, the next filing on such section, in order, shall have the same right as if it had been the first filing.''

[1] Section 3499 of the Political Code then provided that ''if two or more claim the same land,'' the contest must be determined as provided in section 3414. That section provides that when ''a question of law is involved,'' the contest

must be referred to the superior court of the county in which the land lies. Under section 3498, as it read at that time (Stats. 1885, p. 139), an unapproved application to purchase land from the state could not be considered void, although on file for more than six months, if approval thereof had been demanded by the applicant. The proceeding in *mandamus* was, in effect, a continuing demand for such approval and it kept alive the application of Bernhard. When the applications of Dunlap and Rankin were made for the same land, it made a case where two or more persons claimed the same land. The determination of their respective rights, as will be seen, involved a question of the validity of the previous deeds to the state for the taxes above mentioned, which was a question of law. [2] Consequently, it was then the duty of the surveyor-general to refer the applications to the proper superior court, or to present the matter of the conflicting claims to the court having jurisdiction of the *mandamus* proceeding, instead of accepting the later applications and issuing unqualified certificates thereon to the said applicants. With respect to the rights of the persons in this situation, in *Hinckley* v. *Fowler,* 43 Cal. 63, where Fowler's application antedated that of Hinckley for the same land, the court said: "The application of Fowler, thus made in accordance with law, gave him, as against the state, and, so long as the statute remained in force, a privilege to purchase the land he applied for. As against the officers of the state, and all applicants for the same land subsequent in point of time, it conferred upon him a *right* to purchase, which could only be lost by his own failure to pursue the further steps which the statute had provided. The malfeasance or misfeasance of any of the officers could not deprive him of the benefit of his application, nor operate to postpone him to the claim of a subsequent applicant." (See *Pollard* v. *Putnam,* 54 Cal. 650; *Sherman* v. *Winkle,* 121 Cal. 503, [53 Pac. 1090, 54 Pac. 270] ; *Smelting Co.* v. *Kempt,* 104 U. S. 647, [26 L. Ed. 875, see, also, Rose's U. S. Notes], to the same effect.) Upon these principles, and under the provisions of the act of 1889, above quoted, it is plain that if Bernhard had the right to purchase on the terms he proposed, his claim was paramount to that of Dunlap or Rankin, and that the surveyor-general had no right or power to postpone his claim to that of a subsequent applicant. With reference to the rights of

the parties in such circumstances, when the land department of the state has proceeded, notwithstanding the law, to issue certificates and patents to different persons for the same land, this court said: "In cases of conflicting patents from a paramount source of title, it is well settled that, even at common law in actions of ejectment, the court will look behind the patents and ascertain which party had the prior equity. When this is ascertained, the equity will attach itself to the legal title, which will take effect by relation at the time when the equity accrued. Thus it often happens that a junior patent, founded on a prior equity, is held, even in a court of law, to prevail over an elder patent founded on a junior equity." (*Smith* v. *Athern,* 34 Cal. 511.) Other cases to the same effect are *Yates* v. *Smith,* 38 Cal. 65; *Poppe* v. *Athearn,* 42 Cal. 615, and *Young* v. *Shinn,* 48 Cal. 28.

[3] It follows that the right of the plaintiff, under his patent, would relate back to the time when he made his application and offered the necessary deposit to make the same good, and that as this was prior to the applications of the other patentees, the plaintiff's patent would prevail.

In the court below the defendant contested the priority of the plaintiff's patent upon substantially the same grounds that were presented by the surveyor-general in opposition to the writ of mandate in the *mandamus* proceeding. The court below held that the judgment in the *mandamus* case was not binding on the defendant as an adjudication of his right or title, and on the defense set up it made findings in favor of the defendant. We proceed to consider the points arising from these findings.

In 1873, one George Foster obtained a certificate of purchase from the state for the south half of the section, upon a partial payment of the price. On January 24, 1881, his right to purchase was forfeited by the filing of a certified copy of a foreclosure decree against him in the surveyor-general's office, and the land thereupon again became subject to entry and sale. (Pol. Code, secs. 3458–3554; *Directors* v. *Avila,* 106 Cal. 355, [39 Pac. 794].) In 1886, Lawrence J. Parkinson obtained from the surveyor-general a certificate of purchase for the whole of section 36, and made a partial payment thereon. He afterward transferred his right thereunder to Boggs & Champlain. The deferred payments to the state were not made and, on June 20, 1896, a foreclosure

decree purporting to forfeit the said right was entered in the superior court and was filed in the surveyor-general's office on July 6, 1896. The court below found that the summons in the action was never served and that consequently the court did not have jurisdiction to make said decree. In 1895 the land was assessed for taxes in the name of Boggs & Champlain, and on September 13, 1901, a tax deed to the state, in pursuance of a sale based on said assessment, was filed in the surveyor-general's office. In 1896 the south half of the section was assessed for taxes in the name of George Foster, and on August 26, 1902, a tax deed to the state, made in pursuance of a sale based on the Foster assessment, was filed in the surveyor-general's office. When Bernhard applied to purchase the land in 1903 he did not offer to pay the sums due under these tax deeds. The court below held that he should have made such payments and that his application was ineffectual because of his omission to do so.

[4] The court below was in error in holding that the record in the Parkinson foreclosure did not show jurisdiction. Its decision on that point was based on the fact that in a copy of the summons attached to the proof of publication included in the judgment-roll the description of the land described the section as "Sec. 16," instead of section 36. No other form of proof of service was on file, nor was the original summons among the papers. The decree itself, however, contained the following recital: "In this action the defendant Lawrence J. Parkinson having been regularly served with process, as required by law, and having failed to appear and answer the complaint of the plaintiff herein, and the legal time for answering having expired, and the default of said defendant, Lawrence J. Parkinson having been duly entered according to law." It further recited that the case was legally brought on for hearing and duly submitted to the court and that the court heard "the proof necessary to enable it to render judgment herein." The defect in failing to correctly state the number of the section in the description of the land was not fatal to the jurisdiction. Where there is a recital of service, such as that contained in the present decree, the fact that there appears among the papers what purports to be a copy of the summons which incorrectly describes the land is not sufficient to overcome the recital in the decree. "It will be presumed that other proof than that contained in

the judgment-roll was made, for not to so presume would be to deny the record that absolute verity which must be accorded to it." (*Hahn* v. *Kelly,* 34 Cal. 408, [94 Am. Dec. 742]; *McCauley* v. *Fulton,* 44 Cal. 361; *Riley* v. *Lancaster,* 39 Cal. 354; *People* v. *Davis,* 143 Cal. 678, [77 Pac. 651]; *People* v. *Harrison,* 84 Cal. 609, [24 Pac. 311].) The result of these decisions is that where the judgment itself recites service, as in this case, and the original summons is not on file, nor any other evidence of service except the affidavit of publication with the defective description in the copy of summons, it will be presumed, from the recital, that there was a summons actually published, or actually served, which did correctly describe the land, if any description was required. We are not to be understood as holding that any description of the land was necessary under section 407 of the Code of Civil Procedure, as then existing. It follows, therefore, that the court had jurisdiction, the decree was valid, and the right to purchase under the Parkinson certificate became extinguished on July 6, 1896, when the copy of the decree was filed in the office of the surveyor-general.

[5] The conclusion of the court that it was necessary for a purchaser, in order to make a legal application to purchase these lands, to pay the taxes assessed against the land while it was under the Parkinson purchase is also erroneous. This conclusion was founded upon the provisions of section 3788 of the Political Code that, when land purchased from the state, and not fully paid for, has been sold to the state for delinquent taxes assessed thereon against the purchaser or his successor in interest, and a tax deed has been issued to the state upon such sale and has been filed with the surveyor-general, the land "shall again become subject to entry and sale" in the same manner as before, except that the applicant must, as a condition to purchasing, pay into the state treasury, in addition to the price fixed for such lands, a sum equal to the delinquent taxes, penalties, costs, and accruing costs, by virtue whereof the state became a purchaser of the land at the tax sale and also the taxes subsequently accrued on the land prior to the date of the application. These provisions necessarily imply a valid sale to the state upon the tax assessment. They have no application where a deed has been made which is void on its face. [6] In the present case both the deed executed upon the Foster assessment and

that on the Boggs & Champlain assessment recited that the notice of publication of the delinquent sale was first published on a day which was more than twenty-eight days prior to the day fixed therein for the delinquent sale. The statute on the subject (Pol. Code, sec. 3767) provided that the notice published must designate the day and hour when the property will be sold to the state, which sale "must not be less than twenty-one nor more than twenty-eight days from the time of the first publication" of the notice. It necessarily follows that the publication was not sufficient to authorize the sale and that the deed based thereon was void.

[7] Section 3787, which makes the tax deed "conclusive evidence of the regularity of all *other* proceedings," from the assessment down to the deed, does not apply to or cure this defect. Sections 3786 and 3787 must be read and construed together. The phrase "all other proceedings," in section 3787, refers back to section 3786, and, therefore, includes only such proceedings as are not included in section 3786. The presumption as to the proceeding which fixes the time for the sale is prescribed by section 3786. It declares that the tax deed is "primary," meaning *prima facie*, evidence of the fact that the property was sold "at a proper time." (Subd. 5.) The statement in *Warden* v. *Broome*, 9 Cal. App. 175, [98 Pac. 252] to the effect that this matter was covered by section 3787 is inaccurate, and this was evidently overlooked or considered unimportant by this court in denying a rehearing in that case. The "proper time" here referred to is the time designated in the published notice, as provided in section 3767. That time is to be fixed by the tax collector when he prepares the notice and publishes it with the delinquent list. (Secs. 3764, 3765.) The tax deeds here in question were, therefore, only *prima facie* evidence that the tax sales on which they were founded were made "at a proper time." This *prima facie* proof was completely refuted by recitals in the deeds to the effect above stated, showing that the sales were not made at "a proper time," but were made at a time when any lawful proper time had expired. Each tax deed was, therefore, void on its face. [8] It is proper here to explain that the phrase "such deed," with which both sections 3786 and 3787 begin, must, in the present condition of the code, be understood to refer both to the deed authorized by section 3785 and to that authorized by section 3785b.

When the code was first enacted, and until the year 1909, the three sections—3785, 3786, and 3787—appeared therein in regular consecutive order, with no intervening sections. The phrase "such deed" in sections 3786 and 3787 then necessarily referred only to section 3785, it being then the only section authorizing a tax deed. In 1909 section 3785a, and in 1913 section 3785b, were interpolated between section 3785 and section 3786, thus giving rise to some uncertainty as to the particular deed or deeds to which the phrase "such deed" applied. We are satisfied that it now refers both to section 3785 and section 3785b, and applies to the deeds authorized by both sections.

The result is that the surveyor-general was not authorized to demand payment of any taxes by the plaintiff as a condition of accepting and approving plaintiff's application to purchase the land in controversy and that he should have accepted and approved the same upon plaintiff's tender of the necessary amount of money.

[9] The validity of the foreclosure decree against Parkinson and the validity of the tax deed filed in the surveyor-general's office based on the assessment to Boggs & Champlain were questions directly put in issue in the *mandamus* proceeding of Bernhard against the surveyor-general. That judgment was an adjudication that the Parkinson foreclosure was valid and that the tax deed was invalid. It was conclusive, not only of the matters actually alleged in opposition to the writ, but also of any fact which might have been alleged and proven in that proceeding to show that Bernhard was not entitled to the relief given by the judgment. (*Crew* v. *Pratt,* 119 Cal. 149, [51 Pac. 38].) It follows, therefore, that if the tax deed on the Foster assessment would have been a defense to the *mandamus* proceeding, it would have been the surveyor-general's duty to plead it therein, and, failing to do so, he would be forever estopped to claim that it was a defense.

[10] Unquestionably that judgment was a final adjudication of the right of Bernhard binding on the surveyor-general in his official capacity. He is the state official in charge of all matters pertaining to the disposal of the public lands of the state. He is *ex-officio* register of the state land office. (Pol. Code, sec. 497). His duties in relation to public lands are prescribed in sections 3395 to 3573, inclusive, of the Political Code. In any proceeding against him to compel him to per-

form an official duty in disposing of the public land, he represents the state and the judgment rendered in such proceeding is in all respects binding and conclusive against the state to the same extent that it binds the officer in his official conduct with respect to the matter decided. Such a judgment bars the state from afterward setting up to the contrary of what is there adjudicated. [11] Furthermore, it related back to the beginning of the proceeding and fixed the respective rights of the parties and of the state as of that time, based upon the conditions then existing. It therefore follows that the right of Bernhard to have his application to purchase and his deposit of money accepted on the eleventh day of May, 1903, was conclusively determined by that judgment, not only as against the surveyor-general, but also as against the state. The state and all its officers were thereby estopped to deny such right, or to claim that thereafter, in disregard of that right, it had regularly or lawfully disposed of the land to other and subsequent applicants, or that it could so dispose of it, so long as Bernhard's right continued.

But, although the attorney-general and the state were both precluded from claiming any right or title to the land adversely to Bernhard's title under his patent, or from disposing of the land contrary to the decision in the *mandamus* proceeding, the defendant, Wall, claims that he occupies a different position in regard to the matter. The surveyor-general made no entry or memorandum whatever in the records of his office concerning the making of the application by Bernhard or the service of the alternative writ of mandate against him or the pendency of those proceedings. The records and files of his office disclosed nothing relating thereto. After Dunlap and Rankin obtained their patents in 1904, their titles by mesne conveyances became vested in one Burgess. The land never was occupied. Wall desired to purchase the land and with that in view he had the records of Lassen County searched to ascertain the condition of the title. Bernhard had not caused any notice of the action to be filed in the recorder's office of that county, as provided in section 409 of the Code of Civil Procedure. Wall found nothing in the records to show any interest, right, or title of Bernhard in or to the land, but ascertained that the record showed that the title was vested in Burgess under state patents, and

being wholly without knowledge that Bernhard had any right or title to the land or made any claim thereto, the land itself being unoccupied, Wall thereupon purchased the land from Burgess, paid him eight thousand dollars therefor and, on November 21, 1907, received from him a deed therefor, which he duly recorded. He stands in the position of an innocent purchaser for value without notice of any adverse claim, and he contends that thereby he holds the title free from any claim of Bernhard under his previous application and subsequent patent.

[12] The rule is well settled that where land is unoccupied and a person holds title thereto by a contract or deed which is not recorded, and a third person, in ignorance thereof, in good faith and for value, buys the land from the apparent record owner thereof, he takes the title free from the prior, but undisclosed and unrecorded title of the other party. (Civ. Code, sec. 1214.) [13] The plaintiff claims that this rule does not prevail where the party claiming to be an innocent purchaser holds under a deed or patent which is absolutely void. The proposition cannot be denied. It applies as well to private conveyances as to patents issued for public lands of the state or of the United States. If the land in question never was public property, or if it had previously been disposed of or withdrawn from sale or disposition, or if the law had not made any provision for the sale thereof, or had reserved it from sale temporarily at the time the initiatory steps for its acquisition were taken and the proceeding initiated had not been subsequently ratified or authorized, a patent issued to a claimant would be absolutely void, at least as against a prior valid claim, although regularly obtained in form as provided by law. (*Lake Superior etc. Co.* v. *Cunningham*, 155 U. S. 354, [39 L. Ed. 183, 15 Sup. Ct. Rep. 103, see, also, Rose's U. S. Notes]; *Parker* v. *Duff*, 47 Cal. 554; *McGarrahan* v. *New Idria etc. Co.*, 49 Cal. 335.)

[14] The plaintiff claims that the land was withdrawn from sale the moment Bernhard made his application to purchase accompanied with the legal tender of the fees and the required deposit of money. The argument is that this application, although not accepted or approved, was the first initiatory step in his proceeding to obtain the state patent, that it has been diligently followed up to patent, and that under the decisions of this court and of the United States supreme

court his patent is founded on a prior equity and, though
later in date, must prevail over the patents issued upon the
subsequent applications of Dunlap and Rankin, even if the
land has passed into the hands of an innocent purchaser for
value. The general rule invoked is that "the party who
takes the initiatory in such cases, if followed up to patent,
is deemed to have acquired the better right as against others
to the premises." (*Shepley* v. *Cowan,* 91 U. S. 337, [23
L. Ed. 424, see, also, Rose's U. S. Notes.]) The patent after-
ward issued, it is said, relates back to the date of the initia-
tory act and cuts off intervening claimants. (*Ibid.*) There
are many decisions to this effect. For the most part, however,
the facts upon which the status of an innocent purchaser for
value must depend did not exist in those cases, and the ques-
tion was not discussed or mentioned. The cases in which the
first pre-emption claimant has been held to have the prior
equity as against a subsequent entryman whose patent was
first issued could not come within the conditions necessary to
raise the question, for in order to obtain any right at all
under the pre-emption laws, the claimant must have first
settled upon and improved the land claimed and must have
thereafter personally and continuously resided upon it. (*Bo-
hall* v. *Dilla,* 114 U. S. 51, [29 L. Ed. 61, 5 Sup. Ct. Rep. 782,
see, also, Rose's U. S. Notes].) Such continuous residence
and improvements would constitute possession and occupancy
and would impart constructive notice to all subsequent claim-
ants of the land. All such cases may, therefore, be excluded
from consideration. The following cases, cited and relied on
by plaintiff, come within this category: *Shepley* v. *Cowan,*
91 U. S. 330, [23 L. Ed. 424] ; *Weeks* v. *Bridgman,* 159 U. S.
541, [40 L. Ed. 253, 16 Sup. Ct. Rep. 72].

The same reasoning applies to the cases wherein the initia-
tory step which created the prior equity was the filing of some
paper in the public land office, or the making of some entry
in the books thereof, showing the claim of such first claimant
and constituting a part of the public record and files of the
office. Such writings would impart notice to a subsequent
claimant and would prevent him from occupying the position
of an innocent purchaser. The following cases, cited by the
plaintiff, are of this class: *Smith* v. *Athern, supra; People*
v. *Carrick,* 51 Cal. 325; *Stoddard* v. *Chambers,* 43 U. S.
(2 How.) 284, [11 L. Ed. 269, see, also, Rose's U. S. Notes] ;

*McCreery* v. *Haskell,* 119 U. S. 327, [30 L. Ed. 408, 7 Sup. Ct. Rep. 176]; *Webster* v. *Clear,* 49 Ohio St. 397, [31 N. E. 744]; *Hinckley* v. *Fowler, supra; Williamson* v. *Berry,* 49 U. S. (8 How.) 531, [12 L. Ed. 1170]; *Moyer* v. *McCullough,* 1 Ind. 340; *Kempner* v. *State,* 31 Tex. Civ. App. 363, [72 S. W. 888]; *Roseberry* v. *Hollister,* 4 Ohio St. 297; *Huntington* v. *Donovan,* 183 Cal. 746, [192 Pac. 543].

The only other case cited by plaintiff on this point is *Boyles* v. *Kelly,* 10 Serg. & R. (Pa.) 217. The facts in that case occurred before, during, and immediately after the war of the Revolution and it concerned land subject to sale under the laws of Pennsylvania, to which we have not access. It appears from the opinion, however, that the prior settler whose successors finally prevailed had, in regular form, made application to the public land officers to buy the land, and that the only defect in his proceeding was the failure of the public surveyor to return the survey he had made for that settler. As to that, the court held that such misconduct of the officer could not prejudice the claimant, who was in no default, that the survey must "be considered as if it had been actually returned," and that the person who bought *bona fide* from a subsequent claimant who had secured a patent "was bound to take notice of the survey at his peril," and for that reason did not stand in the position of an innocent purchaser for value. The case is somewhat similar to the class of cases last mentioned. At all events, the first claimant was in actual privity with the state as a purchaser, and was shown to be so by the record, at the time the second claim was initiated.

In all cases where a prior equity has prevailed over a patent issued upon a subsequent claim, it appeared that the first applicant had done some act which had the effect, under the law, of bringing him into privity with the state as a purchaser of the land. He had been recognized, both by the law and the officers who were administering it, as an eligible purchaser. In the case of a pre-emption claimant, his settlement and residence on the land and the improvement thereof, with intent to purchase, were sufficient to bring him into privity with the United States as a purchaser. In the case of land which could be purchased without a previous entry thereon, the making of a proper application by one qualified under the law to purchase it, accompanied with the payment of the legal

fees and the deposit of the required part of the purchase price, and the acceptance and filing thereof, would bring the applicant into privity with the state as a purchaser, even before the officer approved the application. But we know of no case which holds that the mere offer of such application, fees, and deposit, and the refusal of the officer to receive them, will give the applicant privity with the state, and enable him to resist the claims of third persons. The decisions are to the contrary. In *Burling* v. *Tompkins,* 77 Cal. 261, [19 Pac. 429], the court said that only one in privity with the paramount title of the United States can attack collaterally a patent issued for lands listed to the state as lieu lands, and that "the refusal of the register of the United States land office to allow him [the defendant] to make the proper application, and pay the fee required, does not, under the circumstances, establish any privity with the United States." To the same effect, see *Kentfield* v. *Hayes,* 57 Cal. 411; *Dreyfus* v. *Badger,* 108 Cal. 64, [41 Pac. 279]; *Youle* v. *Thomas,* 146 Cal. 543, [80 Pac. 714]; *Doll* v. *Meador,* 16 Cal. 326; *Burrell* v. *Haw,* 40 Cal. 377; *Damrell* v. *Meyer,* 40 Cal. 170.

The terms of the statute do not sustain the claim that the mere rejected offer of Bernhard operated to withdraw the land from sale to other applicants, or to put him in privity with the state. It is the making of a filing which establishes the status of the applicant and gives him preference over subsequent filings, unless his filing is abandoned. It is, therefore, clearly apparent that so far as third persons are concerned, who acted without knowledge of his offer and paid money for the land on the faith of the record title, the plaintiff has no prior equity. He paid nothing for the land until long after the defendant purchased it. The delay of nearly seven years in bringing to judgment the action in *mandamus* indicates that he used little diligence in prosecuting the same. There was ample time before the Dunlap and Rankin applications were approved for him to have had them brought in as defendants to the action, and thus have concluded them by that judgment. Plaintiff's case does not present as strong an appeal to the principles of equity as that of the defendant.

[15] The plaintiff claims, however, that the surveyor-general, as a public officer in charge of the land department of the state, represented the state in the *mandamus* proceeding and all persons thereafter coming in privity with it, and

consequently that the judgment in *mandamus* concluded the subsequent patentees and all persons claiming under them, citing *Lyman* v. *Faris,* 53 Iowa, 498, [5 N. W. 621]; *Ashton* v. *Rochester,* 133 N. Y. 187, [28 Am. St. Rep. 619, 30 N. E. 965, 31 N. E. 334], and similar cases. These are cases where in an action by or against a public officer the validity of a tax levy or local assessment and the duty of the officer relating thereto were involved and determined. They establish the rule that in such cases the officer represents all persons whose property is affected by the tax or assessment and that the judgment therein finally determines the validity or invalidity of the tax, and is binding on the entire class of persons interested, although not parties to the action and having no knowledge thereof. We do not think this principle is properly applicable to the case where an officer is dealing officially with a specific parcel of land which he is authorized by the state to sell, and is compelled by mandate to perform a particular duty respecting the same to a person desiring to purchase it. "This doctrine, tersely stated, is to the effect that where it appears that a particular party, though not before the court in person, is so far represented by others who are before the court that his interests receive actual and efficient protection, his actual joinder may be dispensed with, and the decree may be held to be binding upon him." (15 Ency. of Pl. & Pr. 627.) "Like most of the other exceptions to the general rule, the doctrine of virtual representation rests upon considerations of necessity and paramount convenience, and was adopted to prevent a failure of justice." (*Ibid.* 629.) One of the conditions to which the doctrine applies is where the parties are too numerous to be conveniently brought before the court in the action. The cases cited are of this class. This condition does not exist here. No person was or could be interested in the proceeding in *mandamus* until he had himself applied to purchase the identical land, in which event, as we have said, the law provides a mode for settling the respective rights of the several claimants. (Pol. Code, sec. 3414.) We know of no case in which the doctrine of representation has been enforced against a person who was not a party to the action and who, during its pendency, purchased the property involved therein without notice and for value, from one who also was not a party. The reasons upon

which the doctrine rests do not exist in such a case and
its application would produce manifest injustice.

[16] No notice of the pendency of the action in *mandamus*
as provided in the code was filed either in Sacramento County
or in Lassen County, where the land lies. It is at least doubt-
ful if section 409 of the Code of Civil Procedure applies to
such actions. If it does, the terms of that section, in effect,
declare that if there is a failure to comply with it there can
be no constructive notice of the pendency of the action. If
that section does not apply to such action it then comes within
the rule stated in *MacDermot* v. *Hayes*, 175 Cal. 108, [170
Pac. 616], and other decisions there referred to, to the effect
that section 409 is exclusive, and that an action of any other
character than is there provided for does not constitute con-
structive notice of its pendency.

[17] Finally, the plaintiff claims that the defendant can-
not assert his title as an innocent purchaser for value without
notice, unless he avers and proves that, at the time of the
execution of the deed from Burgess to him, Burgess was in
possession of the land. He supports this claim by the fol-
lowing quotation from *Eversdon* v. *Mayhew*, 65 Cal. 167,
[3 Pac. 644] : "To entitle a party to protection as such a
purchaser he must aver and prove the possession of his gran-
tor, the purchase of the premises, the payment of the purchase
money in good faith, and without notice, actual or construc-
tive, prior to and down to the time of its payment, for if
he had notice, actual or constructive, at any moment of time
before the payment of the money, he is not a *bona fide* pur-
chaser." This passage is a part of the argument to support
the proposition that one claiming as an innocent purchaser
must show that he took without notice of the adverse claim.
The question of possession was not involved. Several later
decisions of this court are cited, each of which either para-
phrases or quotes the passage in *Eversdon* v. *Mayhew*. All
of them, however, were directed to the subject of notice and
the question of possession was not involved. The rule there
stated is substantially that enunciated by the supreme court
of the United States in *Boone* v. *Chiles*, 35 U. S. (10 Pet.)
210, [9 L. Ed. 388, see, also, Rose's U. S. Notes]. That case
related to transactions which took place near the beginning
of the last century. The law applying to such transactions
of that period was the common law of England and the rule

regarding *bona fide* purchasers was the rule obtaining under the old common law. The reason for the insertion of the statement in the rule that the one claiming as a *bona fide* purchaser must show that his grantor was *in possession* is readily perceived when we consider the common-law rule that a deed for land then in the adverse possession of another was inoperative and void, excepting against the grantor and persons claiming under him. (*Steeple* v. *Downing,* 60 Ind. 486; *Patterson* v. *Nixon,* 79 Ind. 251; 1 Jones on Real Property, sec. 121.) It is but a variation of the rule already stated that the innocent purchaser cannot claim as such if his deed is void. It being necessary for him to aver and prove that he holds under a valid deed, it was of course necessary under the common law for him to allege that his grantor was then in possession, for otherwise his deed would be void. This is the foundation of that part of the rule and this is the effect of all the decisions on the subject. It has no application in this state, where a deed by a person out of possession is effective to pass all the title of the grantor both as against the person in adverse possession and all others. Consequently, the foundation of the rule invoked by the plaintiff does not exist. The patents from the state to Dunlap and Rankin operated to transfer the title of the state to them and the subsequent conveyances transferred it to the defendant. If all the purchasers had had notice of the claims of Bernhard, it may be that they would be bound to hold the land in trust for him. But inasmuch as Wall did not have such notice, the title has passed, notwithstanding the fact that the land was at the time unoccupied.

The judgment is affirmed.

Olney, J., Wilbur, J., Lennon, J., Sloane, J., Lawlor, J., and Angellotti, C. J., concurred.