[Sac. No. 3014.  In Bank.—December 13, 1921.]

## ROBERT B. REYNOLDS, Appellant, v. CHURCHILL COMPANY (a Corporation), Respondent.

[1] PUBLIC LANDS—ISSUANCE OF PATENT—MANDAMUS—RES ADJUDI-CATA.—In a proceeding in *mandamus* originally brought in the supreme court to compel the state surveyor-general to issue a patent to land owned by the state based upon a certificate of purchase alleged to have been validated by an act of the legislature, the judgment dismissing the proceeding is conclusive on the state and of the rights of the petitioner under such certificate both as to the claims set forth therein and as to any others which might have been presented.

[2] ID.—CONTEST—EVIDENCE—JUDGMENT IN MANDAMUS PROCEEDING—CONSTRUCTION.—Where, during the pendency of a contest between private claimants for the right to purchase state lands, one of them brought a *mandamus* proceeding in the supreme court to compel the state surveyor-general to issue a patent to the petitioner, notwithstanding the pendency of the contest, the judgment dismissing the proceeding is binding upon the petitioner and admissible in the trial of the contest, notwithstanding the recital therein "that the rights of the contestants are not foreclosed by our decision herein" (178 Cal. 554), since from the nature and

character of the decision, as well as the context, the term "contestant" was intended to refer to the rights of those who were contesting the claims of the petitioner, and the court did not intend to change the usual effect of the whole opinion and judgment by such clause.

[3] ID.—UNSEGREGATED SWAMP AND OVERFLOWED LAND—SALE.—Under section 3493m of the Political Code, swamp and overflowed land is subject to sale, even if unsegregated.

[4] ID.—SHORE OF LITTLE KLAMATH LAKE.—CHARACTER OF LAND.—In this contest between private parties for the right to purchase, as swamp and overflowed land, certain land forming a part of the bed of Little Klamath Lake, the conclusion of the district court of appeal that the government surveys of 1873 established the character of the land as sovereign and not as swamp and overflowed land is held to be erroneous, and that it cannot be declared as a matter of law, from facts of which the court takes judicial notice, that the land is not swamp and overflowed land.

[5] ID.—CONTEST—STATE NOT A PARTY—JUDGMENT—LACK OF ESTOPPEL.—While it is made the duty of the state surveyor-general under section 3416 of the Political Code to issue his patent or certificate to the successful party in a contest for the right to purchase state lands, the state is not a party to the contest and is not estopped by the judgment therein.

[6] ID.—STIPULATION AS TO CHARACTER OF LANDS—FORECLOSURE OF INQUIRY—EVIDENCE.—Where, in a contest for the right to purchase state lands, both parties claimed that the lands were swamp and overflowed lands, such question was not an issue, and evidence as to the character of the lands was, therefore, wholly ineffectual and immaterial.

[7] ID.—DECISION AS TO CHARACTER OF LAND — RIGHTS OF UNITED STATES.—A decision of the supreme court in a contest between private persons for the right to purchase land on the shores of Little Klamath Lake that the land is sovereign land is not prejudicial to the rights of the state as against the United States growing out of the act of the legislature (Stats. 1903, p. 4), ceding certain lands in such lake to the United States for reclamation purposes, the government not being a party to the proceeding.

APPEAL from a judgment of the Superior Court of Siskiyou County. James F. Lodge, Judge. Reversed.

The facts are stated in the opinion of the court.

A. B. Reynolds, C. E. McLaughlin and Leon Samuels for Appellant.

A. E. Bolton, Arthur W. Bolton and Tapscott & Tapscott for Respondent.

William V. Cowan and Johnson & Lemmon, *Amici Curiae.*

U. S. Webb, Attorney-General, and R. T. McKisick, Deputy Attorney-General, for State of California.

WILBUR, J.—This is a contest instituted by the plaintiff in the office of the surveyor-general of the state and by him referred by proper order to the superior court of the county of Siskiyou, as provided in sections 3414, 3415 of the Political Code. The plaintiff claims a right to purchase land involved by reason of applications made in the office of the surveyor-general in 1917 and contests the prior application and certificate of defendant's assignor. The defendant claims the right to purchase the land under and by virtue of an application filed in the office of the county surveyor of the county of Siskiyou in 1872 and certificate of purchase issued therefor October 4, 1874. The court rendered judgment against the plaintiff, and held valid the certificate of purchase under which defendant claims, and ordered that a patent issue to the defendant upon payment of the fees provided by law. The plaintiff appeals.

During pendency of this contest the defendant petitioned this court for a writ of *mandamus* to compel the issuance of a patent to it, notwithstanding the pendency of this contest. (*Churchill Co.* v. *Kingsbury,* 178 Cal. 554, [174 Pac. 329].) In that original proceeding the facts were stipulated, as to the character of the land, and the petitioner's application and certificate therefor. The proceeding was dismissed.

Under the trial of this contest the plaintiff offered in evidence the proceedings in the *mandamus* case, and defendant's objection thereto was sustained.

The appellant claims that the respondent is concluded by the judgment of dismissal in the *mandamus* case, and we will consider this point first.

The history of the respondent's claims is fully set forth in the opinion in *Churchill Co.* v. *Kingsbury, supra.* The proceeding was dismissed because the court concluded that under the stipulated facts the land in question was a part of the bed of Little Klamath Lake, which was stipulated to be

187 Cal.—35

a navigable body of water, and hence that the land was owned by the state in its sovereign and not in its proprietary capacity, and that the sale thereof was not authorized by the act of 1893, relied upon by the petitioner as validating its prior certificate of purchase (Stats. 1893, p. 341, subsequently codified [1907] as secs. 3493m to 3493t). The petitioner in the *mandamus* case claimed that the land was sovereign land uncovered by recession, and that the statute of 1893 validated the certificate. The surveyor-general, on the other hand, claimed that the lands were swamp and overflowed lands. The court determined the matter of fact in accordance with the petitioner's contention, but held that the statute of 1893 did not validate the petitioner's certificate of purchase, for the reason that the land in question was not uncovered by the recession of the lake within the meaning of the law of 1893 relied on by petitioner therein.

In this contest both parties alleged in their pleadings that the land was swamp and overflowed land, and so stipulated as well. The defendant also introduced evidence which it claims established the fact that the land was swamp and overflowed land, and the trial court found as a fact that the land was notoriously swamp and overflowed land. On appeal the district court of appeal, third district, held that, notwithstanding the stipulation of the parties, it would take judicial notice of the fact that the land was sovereign land of the state, as shown by the government surveys of record in the office of the United States surveyor-general of this state and the United States general land office. Both parties filed petitions for transfer to this court, and the attorney-general also upon leave filed a similar petition, all contending that the land is swamp and overflowed land. The case has been briefed and argued in this court. The respondent and the attorney-general both claim that the *mandamus* proceeding is not *res adjudicata* in this proceeding and both seek to distinguish the facts in proof herein and as stipulated therein.

[1] We have reached the conclusion that the *mandamus* proceedings are conclusive of the rights of the respondent to purchase the land under its certificate of purchase. In the *mandamus* proceedings the surveyor-general of the state of California represented the state, and the judgment in the case as to the validity of the defendant's certificate of pur-

chase is binding upon the state of California and upon the petitioner in *mandamus*. It was so held in *Bernhard* v. *Wall*, 184 Cal. 612, [194 Pac. 1040]. In that case an applicant for the purchase of public land had been successful in a *mandamus* proceeding. This court, in discussing the effect of the judgment in *mandamus*, said:

"That judgment was an adjudication that the Parkinson foreclosure was valid, and that the tax deed was invalid. It was conclusive, not only of the matters actually alleged in opposition to the writ, but also of any fact which might have been alleged and proven in that proceeding to show that Bernhard was not entitled to the relief given by the judgment. (*Crew* v. *Pratt*, 119 Cal. 149, [51 Pac. 38].) It follows, therefore, that if the tax deed on the Foster assessment would have been a defense to the *mandamus* proceeding, it would have been the surveyor-general's duty to plead it therein, and, failing to do so, he would be forever estopped to claim that it was defense. Unquestionably, that judgment was a final adjudication of the right of Bernhard, binding on the surveyor-general in his official capacity. He is the state official in charge of all matters pertaining to the disposal of the public lands of the state. He is *ex-officio* register of the state land office (Pol. Code, sec. 497). His duties in relation to public lands are prescribed in sections 3395 to 3573, inclusive, of the Political Code. In any proceeding against him to compel him to perform an official duty in disposing of the public land, he represents the state, and the judgment rendered in such proceeding is in all respects binding and conclusive against the state to the same extent that it binds the officer in his official conduct with respect to the matter decided. Such a judgment bars the state from afterward setting up to the contrary of what is there adjudicated. . . . It therefore follows that the right of Bernhard to have his application to purchase and his deposit of money accepted on the eleventh day of May, 1903, was conclusively determined by that judgment, not only as against the surveyor-general, but also as against the state. The state and all its officers were thereby estopped to deny such right, or to claim that thereafter in disregard of that right, it had regularly or lawfully disposed of the land to other and subsequent applicants, or that it could so dispose of it, so long as Bernhard's right continued."

The same rule with reference to the effect of a judgment
as against the state in *mandamus* would apply with equal
force to the rights of the petitioner. The petitioner would
be bound by the judgment not only as to its claims set
forth therein, but any others which might have been pre-
sented. Let us now consider the issues therein presented and
determined and the effect of the judgment. It was there
stated:

"The petitioner relies upon the terms of the act of March
24, 1893, providing for the sale of lands uncovered by the
recession or drainage of the waters of inland lakes and
unsegregated swamp and overflowed lands. (Stats. 1893,
p. 341.) . . . Since the act authorizes the sale both of sover-
eign lands and of unsegregated swamp and overflowed lands,
it might not be necessary for the petitioner to maintain
that the lands in question fall within one of these classes
rather than the other. *It does, however, take the stand that
the land is, in fact, sovereign land of the state,* and in this,
we think, it is clearly right. . . . The agreed facts in this case
show that the land in controversy is a part of the bed of
Little Klamath Lake, a navigable body of water. . . . The
lake consists of the body of water contained within the
banks as they exist at the stage of ordinary high water. . . .

"As we have seen, the lands in question *are not swamp
and overflowed,* and the petitioner can, therefore, prevail
only by bringing them within the first class described in
section 3493, viz.: 'lands now uncovered or which may
hereafter be uncovered by the recession or drainage of the
waters of inland lakes, and inuring to the state by virtue
of her sovereignty.' . . . The lands are still covered by
the waters of the lake during the greater part of each
year. . . .

"It follows that the petitioner has not established his
right to any relief." (Italics ours.) (*Churchill Co.* v.
*Kingsbury, supra.*)

[2] The question of the nature and character of these
lands and the right of the petitioner under its application
to purchase being directly involved in the proceeding, it is
evident that the decision of this court that the lands were not
swamp and overflowed lands is binding upon the petitioner
as well as the state so far as the petitioner's right to pur-
chase the land is concerned. The respondent and the at-

torney-general, however, contend that this court expressly left the parties to this contest to have their rights determined in this proceeding. This contention is based upon the concluding sentences of the opinion in *Churchill Co.* v. *Kingsbury, supra,* which reads as follows:

"It appears from the answer that various contests between this petitioner and opposing applicants for purchase of portions of the lands are pending in the superior court, pursuant to reference by the surveyor-general (Pol. Code, sec. 3414). It should perhaps be said that the rights of the contestants are not foreclosed by our decision herein, which is, of course, based upon the facts as stipulated by the parties to this proceeding.

"The alternative writ is discharged and the proceeding dismissed."

The respondent claims that in the proceedings then pending in the county of Siskiyou both parties were "contestants" and, therefore, the opinion must be construed as reserving the rights of both parties. It may be true as an abstract proposition that both parties herein are, in a sense, contestants in the trial of a contest of this character. Both are affirmatively seeking to have their right to purchase the land from the state established by the decree. But the question here is not the significance of the term "contestant" in the abstract, but is, what was intended by this court in the opinion in question when it used the term "contestants." If the court had declined to consider petitioner's claim for the reason that a contest was then pending in which that claim would be presented and determined and had, for that reason, dismissed the proceedings with the statement that its judgment was without prejudice to the rights of the contestants in the then pending contest, respondent's position would be correct beyond peradventure. No such condition, however, is presented by the record. The obvious and avowed purpose of the *mandamus* proceeding was to determine the validity of the petitioner's certificate of purchase, and that because expressly validated by the legislature it was not open to contest.

The court considered the claims of the petitioner in that regard and passed upon them. The decision, therefore, is binding on the petitioner unless the statement of the court with reference to the effect of the decision upon the contest

entirely changes the legal effect of the judgment. It is clear from the nature and the character of the decision, as well as the context, that the term "contestant," as used in this opinion, was intended to refer to the rights of those who were contesting the claims of the petitioner, and that the court did not intend to change the usual effect of the whole opinion and judgment by this clause relating to contestants. This is indicated by the language used: "It should *perhaps* be said that the rights of the contestants are not foreclosed by our decision herein, which is, *of course,* based upon the facts as stipulated by the *parties to this proceeding.*" (Italics ours.) The court is merely calling attention to the self-evident proposition that the other applicants for the land were not bound by the stipulation entered into between the surveyor-general and the Churchill Company, "parties to the proceeding."

It follows from the foregoing that the trial court was in error in excluding the judgment and record in the *mandamus* proceeding, which record was conclusive against the Churchill Company. The trial court should have rendered judgment declaring that the Churchill Company had no right of purchase.

[3] No question is raised as to the sufficiency of the plaintiff's application. The question as to whether the land in question is segregated is discussed at length by the parties, but is immaterial, so far at least as plaintiff's claims are concerned. If the land is swamp and overflowed land, it is subject to sale, even if unsegregated, under the provisions of section 3493m of the Political Code (*McGill* v. *Cowan,* 179 Cal. 429, [177 Pac. 290]), and the appellant is entitled to have his application therefor granted, upon the elimination of the respondent's prior claim.

[4] In view of the conclusion of the district court of appeal in this case that the land is not swamp and overflowed land, but is sovereign land, and hence not subject to sale (*Churchill Co.* v. *Kingsbury, supra*), it is proper to state our view on that subject, although the parties all contend that the land is swamp and overflowed land and not sovereign land. The district court of appeal was of the opinion that the government surveys of 1873, of which it took judicial notice, established the character of the land as sovereign land. So far as the record in this case is con-

cerned, it is not shown that Little Klamath Lake is a
navigable body of water.· It is not one of the bodies of
water so declared by statute (Pol. Code, sec. 2349) and
whether actually navigable is not shown in the evidence,
although the fact was stipulated in *Churchill Co.* v. *Kings-
bury, supra.* The district court held that it appeared from
the government maps above referred to that the meander
line indicating the easterly shore of Little Klamath Lake
was east of the land in question and that the land, therefore,
was a part of the lake-bed and that this map established
that the land in question was a part of the submerged land
of a navigable lake and, therefore, belonged to the state
by virtue of its sovereignty. On this basis it was held
that the patent of the land issued by the Secretary of the
Interior to the state of California for these lands as swamp
and overflowed land was not binding upon the state of
California, for the reason that the land had all along be-
longed to the state by virtue of its sovereignty, and that the
action of the officer of the United States could not affect the
title of the state.

It is clear that the district court of appeal was in error
in its conclusion. The meander line was evidently run for
the purpose of establishing the boundaries of the upland
or agricultural land and not for the purpose of delimiting
the boundaries of the lake. It does not purport on the face
of the map to be the easterly boundary of the lake. On
the contrary, to the west of this meander line is shown a
large body of land indicated as tule or swamp and over-
flowed land; the acreage of each quarter-section and sub-
division is indicated on the map and preceded by the letter
"S," which indicates swamp and overflowed land. In the
margin of the map of township 48 north, range 3 east,
M. D. M., is an estimate of the amount of swamp and over-
flowed lands appearing upon the township map as 3,798
acres, which corresponds with the quarter-sections and sub-
divisions shown upon the map as swamp and overflowed
land. The same is true as to the map of township 47, range
3 east, M. D. M., where the acreage of swamp and over-
flowed land is estimated on the map as 2,063 acres. On
each map this acreage is indiated as swamp and overflowed
land and is separated from the body of water designated
as Little Klamath Lake by a heavy diagonal line, and the

land in question lies between the meander line on the east and this diagonal line on the west. The field-notes of the survey show that this diagonal line is the eastern boundary of the open water of the lake as distinguished from the land in question east thereof, which is covered with a dense growth of tules. We do not think that this court can declare as a matter of law, from facts of which it takes judicial notice, that the land is not swamp and overflowed land.

[5] This contest is one over the relative rights of the parties to purchase swamp and overflowed lands. Their applications are only for land of that character. The surveyor-general of the state was of the opinion that the land was swamp and overflowed land, and for the purpose of having the relative rights to purchase such land determined referred the contest to the superior court. The proceeding was not intended to determine the character of the land; the parties foreclosed inquiry on that subject by admitting the land to be swamp and overflowed land, as indeed they were bound to do, in order to secure the rights for which they were respectively contending. This was also the contention of the surveyor-general, who stood ready to issue his certificate of purchase or patent as swamp and overflowed land as soon as the relative priority of the parties was determined, while it is made the duty of the surveyor-general of the state to issue his patent or certificate to the successful party in the contest (sec. 3416, Pol. Code; *Laugenour* v. *Shanklin,* 57 Cal. 71, 75, 76; *Lobree* v. *Mullan,* 70 Cal. 150, [11 Pac. 685]; *People* v. *Morris,* 77 Cal. 204, 207, [19 Pac. 378]; *McFaul* v. *Pfankuch,* 98 Cal. 400, 402, 403, [33 Pac. 397]; *Youle* v. *Thomas,* 146 Cal. 537, 541, [80 Pac. 714]). The state, however, is not a party to the contest, and is not represented therein (*Cunningham* v. *Crowley,* 51 Cal. 128, 132, 133; *Polk* v. *Sleeper,* 158 Cal. 632, 636, 637, [112 Pac. 179]; *People* v. *California Fish Co.,* 166 Cal. 576, 611, [138 Pac. 79]), and is no more estopped by a judgment in such a contest than by the issuance of a patent by the surveyor-general without a contest. As was stated in *People* v. *California Fish Co., supra,* concerning a patent of sovereign lands issued after such a contest: "Some of the patents in controversy in this series of cases were issued after and in pursuance of a land contest in the

courts, under section 3414 of the Political Code, as to the right of opposing claimants to purchase the land under the law. Such a contest does not estop the state from claiming and showing that the land was reserved, or that it was and is dedicated to public use. The judgment in such a case merely determines which, if either, of the claimants is a qualified purchaser (not whether the law authorizes a sale of the particular land, but which had the better right), and that the one found to be qualified and having the prior claim is entitled to purchase. The state is not a party thereto and public rights are not adjudicated or concluded thereby (*Polk* v. *Sleeper,* 158 Cal. 632, 637, [112 Pac. 179]). . . . "

In the case of *Polk* v. *Sleeper, supra,* page 637, [112 Pac. 182], a land contest brought under sections 3415 to 3417 of the Political Code, before the superior court, it was said: "The only parties concerned in the action are the parties who properly become parties to the contest in the surveyor-general's office and whose rights have been referred by that officer to the courts for adjudication, and prior to the amendment of section 3415 of the Political Code, in 1907, no other person could intervene in an action commenced under said reference. This was definitely settled in *Youle* v. *Thomas,* 146 Cal. 537, [80 Pac. 714], and reaffirmed in *Youle* v. *Thomas,* 150 Cal. 676, [91 Pac. 584]. The amendment of 1907 authorizes such an intervention only by one legally qualified to purchase from the state public lands of the same character, who, after the order of reference, presents his own application to purchase the land or a portion thereof, to the surveyor-general. The only questions involved in the action are those affecting the relative rights of the parties thereto. *The state is in no sense a party to the action.* . . . " (Italics ours.)

[6] In this case we have the peculiar situation that this court in *Churchill Co.* v. *Kingsbury, supra,* upon a stipulation entered into by the attorney-general representing the surveyor-general, has declared the lands in question to be sovereign lands, notwithstanding the contention of the surveyor-general to the contrary. The attorney-general, in his brief filed herein, states that that stipulation, which was based upon "a careful reading of all the published reports which counsel was able to find from Fremont's narrative,

1843, to the last report of the reclamation service,'' but that none of these reports revealed the facts now disclosed for the first time by the testimony of certain witnesses in this case, called by the Churchill Company, which had theretofore claimed the land to be sovereign land, to the effect that there is a relatively high embankment between the open water of the lake and the tule land, which bank is sooner uncovered by the evaporation of the water than the land farther east, and that this relatively high bank is cut by numerous channels, through which the water enters from the open water of the lake to overflow the tule land. We are not called upon to consider the effect of this evidence or whether it was sufficient to sustain the finding of the trial court that this land was swamp and overflowed land. That question was not an issue in the contest, and the introduction of such evidence was, therefore, wholly ineffectual and immaterial.

[7] The attorney-general appears herein as a friend of the court upon the theory that a decision herein that the land in question is sovereign land might prejudice the rights of the state as against the United States, growing out of a statute passed by our state legislature in 1905 (Stats. 1905, p. 4), ceding certain sovereign lands in Little Klamath Lake to the United States for reclamation purposes. Our decision on this contest cannot, of course, be binding upon the United States, which is not a party to this proceeding.

The judgment is reversed, with instructions to the trial court to proceed in accordance with this opinion.

Sloane, J., Shaw, C. J., Lennon, J., Richards, J., *pro tem.,* Waste, J., and Shurtleff, J., concurred.

Rehearing denied.

All the Justices concurred.