COCKRELL v. WORK, County Surveyor, et al.
(No. 1781.)

Court of Civil Appeals of Texas. Beaumont.
April 18, 1929.

Rehearing Denied May 17, 1929.

W. D. Gordon, T. J. Cartwright, and Thos. J. Baten, all of Beaumont, for appellant.

E. B. Pickett, Jr., of Liberty, A. W. Marshall, of Anahuac, G. P. Dougherty, of Houston, T. L. Foster, of Dallas, Jno. M. Corbett, of Bay City, and Orgain & Carroll, of Beaumont, for appellees.

WALKER, J. The following statement of the nature and result of this suit, and of appellant's assignments of error is taken from his brief:

"E. Cockrell, as the plaintiff in the Court below, filed this suit against W. O. Work, County Surveyor of Chambers County, Texas, as defendant, alleging in substance the following facts:

"(1) That the plaintiff in form approved by law had filed his application with the Commissioner of the General Land Office of Texas, setting up his desire to purchase a portion of the unsurveyed land belonging to the school fund of Texas, and asked to buy the same in accordance with the description and designation fully set out in the petition.

"That upon consideration of the application, the Commissioner of the General Land Office of Texas, declined to recognize the existence of the area sought to be purchased by the plaintiff as public school land, and has refused to authorize the survey to be made.

"That said ruling of the Land Commissioner was based upon want of sufficient information to satisfy him of the existence of said vacancy sought to be purchased, rendering it necessary to establish in this proceeding the boundaries of the lands abutting upon and adjacent to said area sought to be declared as vacant, and to be purchased as such by the plaintiff.

"That the defendant is official surveyor of Chambers County, Texas, and is the proper person required by law to make out and certify to said vacancy and establish it, and that this suit is instituted for the purpose of fixing and establishing the boundaries of said survey in their relation to the unsurveyed school land for which plaintiff has applied to purchase.

"(2) That the land referred to as vacant unsurveyed school land consists of eleven hundred and thirty three acres (1133), situated in Chambers County, and extending across the line at Harris County; and the petition set forth by metes and bounds the area involved.

"It is pointed out in the petition that the vacancy so existing is determined primarily by the true location of the northern boundary line of the William Bloodgood headright league survey, the field notes of which are laid down in the third paragraph of the petition.

"(3) Plaintiff's petition concluded with the following prayer:

"Whereof, plaintiff brings this suit and prays that citation be issued and served upon the defendant and upon final trial that a judgment and decree be entered fixing and establishing the boundaries as hereinbefore set forth, and fixing and establishing the existence and metes and bounds of said unsurveyed public land, and ordering and commanding the defendant in his official capacity aforesaid to make and return to the General Land Office of Texas his official survey showing said vacancy in accordance with the decree of the court and in accordance with the statute in such case made and provided, and plaintiff prays for such other and further relief in the premises, general and special, as this cause may merit.

"This suit was filed on April the 2nd, A. D. 1923.

"Mr. Work answered the suit on August the 30, 1924, and subsequently having retired from the office of County Surveyor, his successor, T. A. Jenkins, appeared and filed an amended answer, making himself a party to the suit, and alleging that he was a duly elected, qualified and acting County Surveyor of the County.

"His answer consisted of the following averments:

"(1) That he is informed and believes that the land described in the plaintiff's petition and claimed by the plaintiff to be unsurveyed public land, is now claimed by a number of other parties whose names and addresses he gave in detail in his answer.

"(2) He thereupon concluded his answer with a prayer that these claimants be each of them impleaded to come into the case, and answer the plaintiff's petition, and that they be served with a copy thereof, and that they be required to set up their respective claims to the land or any interest therein which they might assert.

"He concluded with a prayer for general relief and asked that no costs be adjudged against him in his capacity as County Surveyor. This amended answer was filed October the 28, 1926.

"Citations were issued and these sundry claimants to the land sought to be declared vacant by the plaintiff's petition, and they, as impleaded defendants, filed answers setting up:

"(1) General demurrer to the plaintiff's bill or petition alleging that it was insufficient as a matter of law to require answers, and invoking the judgment of the Court thereof.

"This was followed by defensive averments, denying the allegations of the petition, etc.

"(2) Some of the defendants impleaded by the County Surveyor were cited by publication and Mr. Marshall, attorney of the local Bar, was appointed to defend them.

"Mr. Jenkins having died during the progress of the case, the original defendant, Work, was reappointed Surveyor, and filed an answer adopting the pleading which had been

filed by his predecessor, which was done on April 23, 1928.

"In addition to the general demurrer interposed by the impleaded defendants to the plaintiff's petition, plea of res judicata was also interposed, the substance of which was that a portion of the land sought to be declared vacant had been adjudicated in another suit by another claimant in a similar proceeding to this as not being vacant public domain.

"To this plea of res judicata the original plaintiff filed an exception, averring that such plea of res judicata is wholly insufficient in law, and is inapplicable to any portion of the land involved in the plaintiff's suit, this being a transaction between other parties with whom the plaintiff is in no wise in privity.

"So stood the condition of the pleadings when the case came on to be heard upon its merits.

"The regular Judge of the District being disqualified, an order to that effect was made, and the Honorable J. D. Campbell, Judge of the Sixtieth District Court, regularly assumed to hear and determine the cause.

"And on the 24th day of April, 1928, all parties appearing by counsel, the Court entered a decree to the following effect:

"(1) The exception of the plaintiff to the plea of res judicata in involving a part of the land sought to be declared vacant, was overruled.

"(2) Thereupon, a general demurrer to the plaintiff's petition was presented to the Court and was sustained. And the plaintiff, declining to amend his cause of action, was dismissed; costs being taxed against the plaintiff including a fee of $100.00 (one hundred dollars), to the attorney representing the nonresident defendants who had been cited by publication.

"Thereupon, the plaintiff in open Court excepted to the ruling of the Court, and gave notice of appeal to the Court of Civil Appeals at Galveston.·

"The case has been transferred by the order of the Supreme Court to be heard by this Honorable Court of Civil Appeals at Beaumont.

"Thereupon, the plaintiff, Cockrell, filed in the lower Court the following assignments of errors:

" 'First Assignment of Error.

" 'The court erred in sustaining the defendant's general demurrer to the plaintiff's petition and thereupon is dismissing the plaintiff's case.

" 'Second Assignment of Error.

" 'The court erred in overruling the defendant's exception No. 1 to the defendant's plea of res judicata and in holding that such plea of res judicata presents a defense to the plaintiff's cause of action.'

"The appeal was seasonably perfected and duly filed in this Court for determination."

Appellees would sustain the judgment of the trial court by the following counter propositions:

"First. The court did not err in sustaining the defendants' general demurrer to plaintiff's petition, because this suit is of the nature of a mandamus suit and the petition is wholly insufficient to show a cause of action under the strict rules of pleading applicable to mandamus causes.

"Second. The court did not err in sustaining the defendants' general demurrer to plaintiff's petition, because Article 5432 Revised Statutes 1911, as amended by Section 7, Chapter 163, of the Regular Session of the Thirty-Sixth Legislature, and Article 5323 Revised Statutes 1925, under which this suit was instituted and is prosecuted, are unconstitutional and void, in that they attempt to confer upon the District Court non-judicial power, directing the court to perform a mere ministerial or executive function belonging exclusively to another co-ordinate branch of the State Government, and in that they attempt to compel the court to adjudicate an abstract question, without an actual controversy between real adversary parties.

"Third. The court did not err in overruling the plaintiff's exception to defendants' pleas of res judicata based upon the pleadings and judgment in the case of E. A. Giraud v. George H. Giddings et al., in the District Court of Chambers County, Texas."

### Opinion.

The first and second counter propositions are overruled. While the constitutionality of article 5323 (Rev. St. 1925) was not directly attacked in Smith v. Turner (Tex. Civ. App.) 13 S.W.(2d) 152, it was necessarily involved, and the court, in disposing of that case, assumed its constitutionality. The article is given in full, in the case cited, and construed by the court, and its effect, in a suit of the. nature of the suit before us, fully discussed. In Anderson v. Polk (Tex. Sup.) 297 S. W. 219, Judge Greenwood cited and construed this article without suggesting that it might be unconstitutional. This recognition of its constitutionality by the Supreme Court and by the Court of Civil Appeals is authority for its validity. It must be presumed that the Supreme Court, before vesting property rights upon an act of the Legislature, first determines its constitutionality. Appellees have raised a most interesting question which they have ably supported by authorities from many jurisdictions, but we believe they are foreclosed by the authorities just cited.

Appellant's petition was not bad on general demurrer on the theory that he failed to plead a cause of action. The land in controversy and described by him as follows:

"The land above referred to is vacant, unsurveyed school land, and is described as follows, to wit:

"Eleven hundred and thirty-three (1,133) acres situated in Chambers County and extending across the line into Harris County and located about twelve miles 70 west from Anahuac on the waters of Cedar Bayou a tributary of Trinity Bay, and more particularly described by metes and bounds, to wit:

"Beginning at a cedar stake set for the inner N. E. corner of the Geo. Ellis league, from which an 18" Red Oak marked A bears S. 25 deg. 40' E. 10.8 varas, and 15" Elm marked the same, bears, S. 6 deg. 20" W. 7.6 varas and an old Oak Stump marked S. 43 deg. 10" W. 13.3 varas; thence with the E. line of the George Ellis league S. 9 deg. 30" E. 795.85 varas; thence N. 80 deg. 38" at 306.35 varas passed the N. W. corner of the Wm. Bloodgood league; at 706.36 varas crossed Cedar Bayou, running S. 51 deg. E. and at 906.36 varas crossed Cedar Bayou running N. 51 deg. 15" E. and at 1,506.36 varas crossed Cedar Bayou the third time, running S. 7 deg. E. and in all 5,306.36 varas the N. E. corner of the said Bloodgood in the open prairie; thence S. 4 deg. 2" E. with the E. line of the said Bloodgood league 1,484.78 varas to the N. W. corner of the Wm. Bloodgood Augmentation; thence N. 60 deg. 55" E. 1,615.72 varas with the N. line of the Augmentation to intersect the W. line of the Wm. Hodge league; thence N. 30 deg. 40" W. with the West line of the Hodge survey 2,055.78 varas to intersect the south line of the Henry Griffith league; thence South 59 degrees 20" W. 1,462 varas with the S. line of said Griffith league to the southern S. W. corner thereof; thence N. O degrees 40" W. 500 varas for the inner S. W. corner of said Griffith league; thence S. 89 degrees 20" W. 250 varas for the Northern S. W. corner of said Griffith league, in the East line of the T. M. Blake survey; thence S. 30, 40" E. 208 varas with the East line of the Blake survey to an iron stake for corner; thence with the South line of the Blake, W. D. Smith and George Ellis surveys S. 80 degrees 40" W. at 3,600 varas passed the S. W. corner of the W. D. Smith; at 3,617 varas crossed Cedar Bayou, running, S. 24 degrees 12" E. at 3,820 varas crossed Cedar Bayou running N. 26 degrees 40" W. at 4,321.5 varas crossed Cedar Bayou the third time, running S. 37 degrees 30" W. just below the mouth of Ellis Branch, and in all 4,486 varas to the place of beginning."

It was further alleged that the vacancy pleaded was determined by the true location of the northern boundary line of the William Bloodgood headright league survey. Appellant, by his description of the land claimed by him to be vacant, located the north boundary line of the William Bloodgood in its relation to the contiguous surveys. If this line is correctly located upon the ground as claimed by appellant, then the vacancy exists between the Bloodgood and the other surveys. On the allegations of appellant's petition, the surveys contiguous to the land in controversy are not contiguous to each other. Appellant pleaded that the land commissioner declined "to recognize the existence of the area sought to be purchased by the plaintiff as public school land," which ruling he alleged was "based upon want of sufficient information to satisfy the commissioner of the existence of said vacancy." To establish the vacancy, he further alleged in part the boundaries of the titled and patented lands abutting upon and adjacent to the area claimed to be vacant. Appellant's description of the land in controversy fully and definitely located the abutting surveys in their relation to each other, and specifically pointed out that the William Bloodgood survey was the one that had been erroneously located on the ground. The allegations of the petition, when properly construed, are to the effect that the land commissioner recognized the William Bloodgood as being contiguous to the other patented surveys and that this was error; when properly located in relation to each other, the patented surveys do not lie contiguous but leave outside of their metes and bounds the land in controversy, which is not a part of any of said surveys, but "vacant, unsurveyed school land." We think this construction of appellant's petition, sustaining it against the general demurrer, is fully supported by the Supreme Court's opinion in Anderson v. Polk, supra. It was there held that plaintiff's petition was bad on the ground that the facts pleaded, aided by other facts judicially known to the court, showed that the land in controversy was not vacant school land; in other words, the petition was bad because the plaintiff pleaded himself out of court. It was said:

"So here, regardless of what we might hold if the petition were silent after averring that the area in controversy was unsurveyed public school land, we cannot let that allegation override others which, together with the presumptions arising from the facts alleged and the facts within our judicial knowledge, put the land within what appears to be a valid grant from Spain to San Antonio."

In the case at bar, appellant pleaded that the land in controversy was "unsurveyed public school land." Though the petition was not silent after that allegation, yet its effect was not destroyed by the other allegations; that is, appellant did not allege facts showing that the land was a part of the patented adjacent surveys. It was affirmatively pleaded that the land was not a part of the adjacent surveys, and facts were pleaded which, if true, sustained that conclusion.

We believe the court correctly overruled appellant's demurrer against the plea of res judicata. This plea was as follows:

"And further specially answering if necessary, these defendants say that heretofore, to wit, on the 15th day of October, 1904, a suit styled E. A. Giraud v. George H. Giddings, et al., No. 558 on the docket of this court, was filed by E. A. Giraud as plaintiff against George H. Giddings and others as defendants. That in said suit No. 558, the plaintiff therein, E. A. Giraud, was seeking to have surveyed an unappropriated public domain belonging to the school fund of this state, the same land, in part, which plaintiff herein, E. Cockrell, is now seeking to have surveyed, and alleging it to be vacant, unsurveyed school land. That said suit No. 558 was filed and prosecuted by the plaintiff therein, E. A. Giraud, against the defendant, George H. Giddings, in his official capacity as County Surveyor of this county, and this suit is being prosecuted by the plaintiff herein, E. Cockrell, against W. O. Work, as County Surveyor, he being at present (as he was when this suit was filed) the duly qualified and acting County Surveyor of this county, and therefore, a successor in office of the said George H. Giddings who was the duly qualified and acting County Surveyor of this county when said suit No. 558 was filed and continued to be until after said suit was finally disposed of by this court. In addition to said George H. Giddings, other persons were defendants in said suit No. 558 and the plaintiff therein alleged in his petition that said other defendants were setting up a claim to the land involved in that suit, and whatever title to said land which then vested in those defendants in said suit now still vests in them, or in their successors in title who are defendants in this suit, the fact also being that some of the defendants in this suit were defendants in said suit No. 558. That said suit No. 558 was prosecuted by the plaintiff therein for the purpose of having it determined by this same court that the land claimed by him was vacant and unappropriated public domain of this State belonging to the public school fund of this State, and the plaintiff in this cause is making the same claim and asserting the same right, and in that suit No. 558, on the 17th day of March, 1905, this court, by its final judgment, determined, adjudged and decreed that the land involved in that suit was not vacant and unappropriated public land, and also said final judgment determined and established upon the ground the actual location of the boundary lines of the above mentioned William Bloodgood league, William Bloodgood Augmentation survey and Henry Griffith league. The very same issues in respect to the actual location of the boundary lines of said surveys upon the ground, which were involved in said suit No. 558, are again involved in this suit, and the effect of the final judgment rendered in that suit, by which the said boundary lines were determined and actually located upon the ground, was to determine, adjudge and decree that the land now involved in this suit, was not then and is not now, vacant, and unappropriated public domain. That said final judgment of this court rendered in said suit No. 558 was not appealed from, nor has it been in anywise set aside or otherwise altered to any extent, but the said judgment as rendered by this court still remains in every respect in full force and effect as a binding and valid judgment of this court, all of which is more specifically shown by the certified copy of plaintiff's petition in said suit No. 558, attached hereto and marked Exhibit A, by the certified copy of answer filed in said cause by the defendant therein, George H. Giddings, as County Surveyor, attached hereto and marked Exhibit B, and by the certified copy of the final judgment rendered in said cause, attached hereto and marked Exhibit C, all of said exhibits being now hereby expressly referred to and made a part hereof."

The exhibits referred to in the plea were attached to and made a part of the answer, identifying that part of the land in controversy in this suit which was put in controversy in the Giraud suit.

Prior to the enactment of article 5323 (Rev. St. 1925) the claimant of land, on the theory that it was vacant, had the right to institute a mandamus suit against the county surveyor to compel him to survey the land and make due return of his work; where all adjacent claimants were parties, the suit partook of the nature of an action in trespass to try title and the judgment, as between the parties, was res judicata of the title to the land in controversy. Commissioner of the General Land Office v. Smith, 5 Tex. 484; Thomson v. Locke, 66 Tex. 383, 1 S. W. 112; Schley v. Blum, 85 Tex. 553, 22 S. W. 667. In Smith v. Turner, supra, it was held that a suit instituted under authority of article 5323 was in its nature identical with suits as previously instituted under principles of general jurisprudence, and that the judgment, where all adverse claimants were parties, was res judicata of the title to the land in controversy, as between the parties. In support of this construction of this article, and of the effect of the judgment rendered under its authority, the court cited Thomson v. Locke, supra. Since the two classes of suits are identical in their nature, the issue of res judicata, arising against the Giraud judgment, pleaded by appellees, must be determined as if another claimant, immediately after Giraud lost his suit, had filed a new action against the county surveyor to compel him to make a survey of the same claimed by Giraud. Unless the judgment in Giraud's suit was res judicata in favor of the adverse claimants against every effort that might be made in the future to have their land declared vacant, then there is no end to litigation against them, and this claim of vacan-

cy remains a constant threat against their title and can never be judicially removed; though successful in a hundred contests, they may eventually lose their land. Such a conclusion can have no basis in law. To raise a justiciable issue against the adverse claimants, the plaintiff must have a claim to the land. Thomson v. Locke, supra, classified the right to purchase as the superior right to the land; though holding that such a right is not one of title, yet it is sufficient to maintain an action at law against the adverse claimants, and its adjudication is res judicata of the title to the land. The plaintiff cannot maintain his action as holder of the right to purchase until he acquires that right from the state; that is, until the state has vested in him that right to the exclusion of all other parties. Hickey v. Collyns, 40 Tex. Civ. App. 565, 90 S. W. 716. The right to purchase thus becomes a vested property right available against the state and all other parties as fully as if the state had given him the land under patent.

 The right of the state to sell, and of the purchaser to acquire, any particular tract of land, rests absolutely upon a finding that the state owns the land, as applicable to the situation before us that the land is vacant, unsurveyed school land. Under the allegations of appellees' plea, Giraud owned as property the right to buy a part of the land now in controversy. He never abandoned that right nor forfeited it nor surrendered it back to the state, but, asserting it as a hostile claim against the owners of the adjoining surveys, prosecuted his claim to final judgment, which denied his claim of vacancy. This judgment annulled his right to purchase. The power of the state to sell and of a prospective purchaser to buy have been judicially denied. It has ceased to exist and the state now has no right nor power to sell. To the extent that the land in controversy in this suit was involved in Giraud's suit, the judgment against Giraud is res judicata in favor of appellees against appellant and all other persons who may seek to acquire from the state the right to purchase this land as vacant, unsurveyed school land.

 On another theory appellant's special demurrer was properly overruled. While the state was not a party to Giraud's suit eo nomine, and is not a party to this suit, it is in privity with both suits, since they were brought for its benefit and under authority granted by it. Judgment declaring the vacancy would vest it with title burdened only with applicant's right to purchase. If the Giraud judgment ·is not res judicata, then the state has the power to wage a never ending contest against the adverse claimants, constantly putting their title in jeopardy, but never jeopardizing its own. That is not the law. Neither the state nor any other plaintiff can raise a justiciable issue except by put-

ting its claim in issue against the claim if its adversary. In section 407 of the Fifth Edition of Freeman on Judgments it is said: "No person can bind another by any adjudication who was not himself exposed to the peril of being bound in a like manner had the judgment resulted the other way." That the adverse claimants were bound was directly held in Schley v. Blum and the other authorities cited, supra. In construing the effect of a judgment against one not named therein, but a beneficiary thereunder, Freeman in section 409 of the authority just cited, said: "A judgment may be admissible in actions involving strangers to it where their interests hang as `incidents or consequences therefrom." There was but one action against appellees—the issue between their patents and the state's claim of vacancy. This issue was made by Giraud, not only for himself, but for the state. In Roby v. Eggers, 130 Ind. 424, 29 N. E. 368, it was said: "There was but one cause of action against Eggers; * * * one who prosecutes a suit in the name of another to establish a right of his own is as much bound by the result of that suit as he would be if he were a party to the record." The following authorities fully support the rule announced: Young v. Bank of Miami (Tex. Civ. App.) 175 S. W. 1105; City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S. 371, 17 S. Ct. 905, 42 L. Ed. ·202; Gunter v. Atlantic Coast Line R. Co., 200 U. S. 273, 26 S. Ct. 252, 50 L. Ed. 477; Reynolds v. Churchill Co., 187 Cal. 543, 202 P. 865. Freeman on Judgments (5th Ed.) § 509. In Bernhard v. Wall, 184 Cal. 623, 194 P. 1045, it was held that, in any proceeding against a public officer "to compel him to perform an official duty in disposing of the public land, he represents the State, and the judgment rendered in such proceeding is in all respects binding and conclusive against the State to the same extent that it binds the officer in his official conduct with respect to the matter decided. Such a judgment bars the State from afterwards setting up to the contrary of what is there adjudicated."

The overruling of appellant's exception to appellees' plea may be sustained on the theory that Giraud's suit involved not only rights peculiar and personal to him, but also put in issue matters of public interest; that is, the right of the public to purchase this land. No one would question the effect of the judgment as it relates to Giraud himself. The ruling announced in City of Palestine v. City of Houston (Tex. Civ. App.) 262 S. W. 223, makes that judgment also res judicata, as it affects the public interest.

 A proceeding under article 5323, or under the principles of general jurisprudence, resorted to before the enactment of that article, is in the nature of a proceeding in rem. Smith v. Turner, supra. A judgment in a suit in rem determining the status of

the subject-matter of that suit, when binding upon any person, is equally binding upon all persons. Therefore, since the judgment in Giraud's suit is binding upon him and these appellees, it is also binding upon the state. The effect of a judgment in rem is fully discussed in Freeman on Judgments under the general heading of Judgments In Rem. The authorities there cited sustain the proposition we have announced. On this theory, also, the appellant's exception to appellees' plea was properly denied.

For the reasons given, the judgment of the trial court is reversed, and the cause remanded for a new trial.

Reversed and remanded.

### On Rehearing.

Appellees were incorrect in saying in their motion for rehearing that we denied and refused the application of their pleas of res judicata to all of the land sued for not involved in Giraud's suit. We simply held the plea good as to all land involved in that suit. As to the balance of the land included in appellant's petition, we expressed no opinion, as the issue was not before us.

Motions for rehearing of all parties overruled.