**W. A. ROBISON,** Administrator of the Estate of Robert Sidebotham, Deceased, and Robert Sidebotham and James Sidebotham, Appellants,

v.

Helene Marceau **SIDEBOTHAM,** Appellee.

**W. A. ROBISON,** Administrator of the Estate of Robert Sidebotham, Deceased, and Frank J. Fontes and Delger Trowbridge, his attorneys, Appellants,

v.

Helene Marceau **SIDEBOTHAM,** Appellee.

No. 15123.

United States Court of Appeals
Ninth Circuit.

April 2, 1957.

Rehearing Denied July 25, 1957.

Delger Trowbridge, San Rafael, Cal., Frank J. Fontes and Theodore M. Monell, San Francisco, Cal., for appellant.

Manuel Ruiz, Jr., Los Angeles, Cal., for appellee.

Before HEALY, POPE, and LEMMON, Circuit Judges.

LEMMON, Circuit Judge.

"Because there must be an end to litigation, the legal principle of res judicata is a salutary one and should be freely applied," says the successful litigant.

"Yes, but—", replies his adversary, "yes, but *our* case is different. As to *us, res judicata* should not be invoked because," etc.

Debates of this type have been going on for centuries. In a towering milestone in the law of *res judicata,* a California jurist who attained a place on the United States Supreme Court, gave a masterly elucidation of the principle. We refer to Mr. Justice Field's opinion in Cromwell v. County of Sac, 1877, 94

U.S. 351, 352–353, 24 L.Ed. 195, which is to be quoted from hereinafter.

1. *Statement of the Case*

This is the second appeal in the instant case. With the exception of two crucial pleadings and a crucial prior decree, the relevant record in this case will not be summarized herein, since it is amply stated in our first opinion, published *sub nom.* Sidebotham v. Robison, 9 Cir., 1954, 216 F.2d 816. The three vital documents will be fully summarized hereinafter.

2. *The Appellee's Statement of "Claim of Interest" in the Estate of Sidebotham Filed in San Francisco On December 4, 1952*

In the Superior Court of the State of California, for the City and County of San Francisco, on December 4, 1952, the present appellee filed what she captioned a "State [sic] of Claim of Interest in Estate Pursuant to Probate Code 1080" "In the Matter of the Estate of Robert Russell Sidebotham, Deceased." The document, signed by the appellee's attorney on this appeal, contained the following material allegations:

The statement set forth the appellee's "interest in the estate" of Sidebotham, who died intestate during the month of December, 1951. Phil C. Katz was appointed administrator of the estate.

The only heirs of the decedent, other than the petitioner, are Robert Sidebotham and James Sidebotham [the present appellants], by a former marriage of the decedent.

The estate consists of community property only, as well as increase thereof, all of which constitutes property of petitioner (appellee), by virtue of the following facts:

a. Appellee and decedent were married in Tijuana, Lower California, Mexico, on May 30, 1928, and were husband and wife up to and including November 14, 1946, on which latter date "said marriage was dissolved by a Court of competent jurisdiction."

b. The matrimonial domicile of the appellee and the decedent was at all times the State of California.

c. During the marriage the decedent accumulated real and personal property, consisting of more than $75,000 in cash, on deposit in banks in California; and real estate and other properties.

The appellee's petition concluded with the following paragraphs:

"That said *community* property, has never been partitioned, either by agreement of petition [sic] and decedent, judicial decision, or otherwise; and upon the death of decedent, petitioner became entitled to receive one-half thereof by survivorship, and retain the other half thereof, which she at all times has owned from the moment of its acquisition during the marriage.

"Wherefore, petitioner prays that the Court determine that she is entitled to said property of said estate above set forth and that a judgment and decree of the Court be made accordingly." [Emphasis supplied.] [Deft. Ex.A.]

It is agreed that the above petition was filed in "the probate jurisdiction of the Superior Court", "the probate division of the Superior Court", or "the superior court acting in the exercise of its probate jurisdiction", as it is variously phrased. See Schlyen v. Schlyen, 1954, 43 C.2d 361, 372, 273 P.2d 897.

3. *The "Decree Establishing Heirship"*

On December 10, 1953, a Judge of the Superior Court in San Francisco signed a "Decree Establishing Heirship". The decree recited that the petition of Robert E. Sidebotham and James J. Sidebotham, praying that the court determine who were entitled to distribution of the estate of Robert Russell Sidebotham, deceased, had come up for hearing; that satisfactory proof of notice had been given; that the two above-mentioned petitioners had appeared by their attorney and had filed their written statement setting forth their respective claims of interest in the estate, "and that Helene Marceau Sidebotham also appeared by her petition filed herein on the 4th day of December, 1952; and that the Court proceeded to hear "the petitions of both Robert E. Sidebotham and James J. Sidebotham and of Helene Marceau Sidebotham". After a hearing of the evidence and the arguments of counsel, it was—

" * * * ordered, adjudged and decreed by the court that Robert Russell Sidebotham, alias, died intestate on the 21st day of December, 1951, leaving surviving as his only heirs at law *and the only persons entitled to distribution of said estate Robert E. Sidebotham and James J. Sidebotham, the sons of said decedent;* that thereupon the estate of said decedent descended to his said heirs at law *and is now vested in them,* subject to administration, share and share alike, *and each of said persons is entitled to distribution of one-half of said estate* when said estate shall be in a condition to be closed.

"*It is further ordered, adjudged and decreed that the petition of Helene Marceau Sidebotham be and the same is hereby denied.*" [Emphasis supplied.]

Our earlier opinion in this case was handed down on October 18, 1954. Neither of the above exhibits was mentioned in that opinion, of course, since they first came into the case when they were put into evidence in the Court below at the trial on the facts, which was held on October 24, 1955.

4. *The Third Amended Complaint in the Instant Case*

The third—and last—amended complaint in this case was entitled an action to "Quiet Title Accounting and Injunction". It incorporated "paragraphs I to VII, inclusive, of her first cause of action, as contained in her second amended complaint to quiet title, accounting and injunction", and "paragraphs I and II of her second cause of action" in the same second amended complaint. Those two causes of action are thus summarized in our first opinion, 216 F.2d at page 821:

"In her second amended complaint, appellant alleged in the first cause

of action that on the death of Robert Sidebotham on December 21, 1951, she and he were tenants in common of certain real and personal property, each being the owner of an undivided one-half of the property, that the administrator has repudiated the co-tenancy and refused to her the right of possession and beneficial enjoyment of her share as well as the right to an accounting as to the rents and profits pertaining to the property. She stated the capacity of Katz as Administrator of the Estate and the defendants Robert Sidebotham and James Sidebotham as claiming the Estate as the heirs at law.

"In the second cause of action which incorporated the allegations of the first, she averred that she was, at the times mentioned, the owner and entitled to the possession of an undivided 50% of the assets, property, both real and personal, as well as the fruits and increase thereof, which the decedent possessed at the time of his demise."

In addition to the above two causes of action, transplanted as two separate causes of action from the second into the third amended complaint, the third amended complaint contains a third cause of action. Although that third cause of action is fully summarized in our first opinion, for the convenience of the reader we give a summary here, as follows:

Since the death of Robert Sidebotham, on December 21, 1951, the appellee, as an aggrieved party, has discovered the following facts constituting fraud against her, which fraud proximately caused her to "suffer a grievous mistake, from which she desires relief".

The appellee was married to Robert Sidebotham on January 1, 1927, and was divorced from him on November 14, 1946, in Nevada, by substituted service.

During 1938, when Sidebotham was sentenced to jail for failure to report a real estate subdividing scheme to the State Real Estate Commission, he borrowed $100 from the appellee, and told her that as soon as he made some money he would pay her back. He frequently saw the appellee until the middle of 1940, always informed her that he was "broke", but occasionally would give her rent and food money, never paid her back the $100, and never informed her that "he had made any money".

At the time of his death, "certain assets were found in his possession, under the following aliases * * * and several combinations of the name of Sidebotham." Those assets passed from the decedent's control to Phil C. Katz, as his personal representative, "and to the present successor of said representative, towit: [the appellant Robison]."

That one of the reasons of the decedent "in so hiding his assets was to prevent [the appellee] from sharing in acquests and gains during her marriage to him," etc.

In 1941 the "decedent refused to further cohabit with plaintiff", etc., "and she did not know his whereabouts". In November, 1946, the appellee procured a divorce from him on substituted service.

"When questioned by her attorney, whether there was any community property, she answered that she did not know. That said attorney, unbeknownst to [appellee], nevertheless framed a formal pleading wherein it was stated that there was no community property. That plaintiff did not read the same but at the hearing of the action, wherein a divorce was granted to [appellee], she did not testify concerning the existence or nonexistence of property of the marriage."

The Nevada court did not dispose of the property rights of the parties, etc., and there was no evidence submitted to the Court concerning property, but the court nevertheless found that the allegations of the complaint were true and sustained by the evidence. " * * * the finding aforesaid was arbitrary and capricious, and the Court lacked the power * * * accordingly to make the same, since there was no evidence submitted on the subject whatsoever."

The appellee seeks relief from her mistake and the estoppel that would

otherwise apply, but for said mistake, "in that an adjudication that there was no community property, under the facts hereinabove set forth, would result in great and irreparable damage, etc. * * * the presumption of law * * * that Robert Sidebotham admitted all of the facts which were pleaded in the Nevada Judgment, by reason of lack of personal service upon him, is a fiction' which this Court of Equity ought to weigh against the misconduct of Robert Sidebotham in having actively concealed assets," etc., to which the appellee "had an equal and vested interest with him. * * * [the appellee] first discovered that she had signed the formal pleading containing the sentence that there was no community property, * * * after the institution of this case at bar, when her attorney, Manuel Ruiz, Jr., informed her of the same, on July 13, 1953, said attorney having been on the same day so advised by the attorneys for the defendants [appellants herein]."

The prayer asked for a "writ of mandamus or mandatory injunction, or other proper order" "requiring [appellants] * * * to account for all monies, [etc.] in their possession, held for * * * the account of the Estate of Robert Sidebotham, etc., * * * and that they * * * be restrained from paying out further funds, etc., to third parties."

The prayer also asked for an accounting and for a decree declaring that the appellants "have no interest" in the assets in question, "and the assets accounted for to the extent of an undivided one-half thereof".

The appellee also asked that she be relieved "from any estoppel or mistake proximately resulting from the fraudulent conduct of concealment of said Robert Sidebotham concerning her property rights."

Finally, the prayer requested "That it be decreed that [*appellee*] *is the owner and entitled to the possession of an undivided half of the assets, etc., constituting the Estate of Robert Sidebotham, deceased.*" [Emphasis supplied.]

On February 23, 1955, the appellee amended her Third Amended Complaint by alleging that she was married to Sidebotham in Tijuana, Lower California, Mexico, on May 30, 1928. In her original Third Amended Complaint, it will be remembered, she had alleged that she was married to him on January 1, 1927.

5. *The "Decree Establishing Heirship" Is Res Judicata in the Instant Case*

We have fully summarized the "Decree Establishing Heirship", rendered by the Superior Court of the City and County of San Francisco. We have also given ample synopses of the appellee's statement of "Claim of Interest" filed in that Court, and of her Third Amended Complaint in its First Amendment filed in the Court below.

We have seen that in her San Francisco claim of 1952 the appellee asserted that she was entitled to retain the other half-interest "which she at all times has owned from the moment of its acquisition during the marriage".

In her present suit, she avers that her deceased ex-husband hid his assets so as to prevent her from "sharing in acquests and gains during her marriage to him"; that when questioned by her attorney in the Nevada divorce suit as to whether there was any community property, "she answered that she did not know"; and that she "seeks relief from her mistake", "in that an adjudication that there was no community property, under the facts hereinabove set forth, would result in great and irreparable damage," etc. She asks that she be decreed the owner "of an undivided half of the assets" of the estate.

But the San Francisco decree filed on December 14, 1953, and signed by the Judge of the Superior Court four days previously, denied her petition *in toto,* in which she claimed all of the community estate, half as owner "from the moment of its acquisition during the marriage" and the other half "by survivorship".

Since her 1952 petition, in which she claimed *all* of the community estate

was *wholly* denied, she cannot now relitigate a claim for *one-half* or any other part thereof. Just as she originally could not have sued piecemeal for her alleged share of the Sidebotham estate, so can she not sue *now* for a piece of it, her former total claim having been already judicially denied.

In Cromwell v. County of Sac, supra, 94 U.S. at pages 352–353, Mr. Justice Field said:

"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, *not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example: a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration or payment.* If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed. *The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or*

*defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law, upon any ground whatever."* [Emphasis supplied.]

If it be argued that the "Decree Establishing Heirship" purported to adjudicate the rights only of Robert E. Sidebotham, James J. Sidebotham, and Helene Marceau Sidebotham in the estate of Robert Russell Sidebotham, while in the present suit, W. A. Robison, the administrator of the decedent's estate, has been made a party defendant, there is an answer both simple and conclusive.

The administrator is not a necessary party to the instant suit, and therefore his presence in the case cannot defeat the application of the doctrine of *res judicata.*

In Sullivan v. Curry, D.C.Ariz., 1930, 40 F.2d 948, 950, appeal dismissed 9 Cir., 1930, 44 F.2d 1020, the Court said:

"In the case of Stewart v. Smith, 6 Cal.App. 152, 91 P. 667, 669, which is similar to the case at bar, and in which an executor was joined as a party defendant, the Supreme Court of California held: 'The executor is not a necessary party to the action. All the devisees, legatees, and persons claiming an interest in the estate are made parties plaintiff and defendant, and, as the executor has no interest as such in the distribution of the estate, he is properly excluded from a contest over the right to a distribution of the whole or a part of it'—citing [many cases]."

And in Sunshine Anthracite Coal Co. v. Adkins, 1940, 310 U.S. 381, 402, 60 S. Ct. 907, 916, 84 L.Ed. 1263, not cited by counsel, the Court said:

"Where the issues in separate suits are the same, the fact that the parties are not precisely identical

is not necessarily fatal. As stated in Chicago R. I. & P. Ry. Co. v. Schendel, 270 U.S. 611, 620, 46 S.Ct. 420, 423, 424, 70 L.Ed. 757, 'Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different * * * and parties nominally different may be, in legal effect, the same.' A judgment is *res judicata* in a second action upon the same claim between the same parties or those in privity with them [citing Cromwell v. County of Sac, supra]".[1]

The principle of *res judicata* has been repeatedly applied to probate and other matters by the Supreme Court of California.

In the leading case of Crew v. Pratt, 1897, 119 Cal. 139, 148, 149, 51 P. 38, 42, the Court said:

"Law writers and courts, in treating of jurisdiction, have usually contented themselves with saying that, where courts have jurisdiction of the person and of the subject-matter of the controversy, their judgments, if erroneous, are voidable, but not void; that is to say, they are open to direct attack as upon appeal, but not to collateral attack. In thus defining jurisdiction of the subject-matter, it must be understood that the power to pronounce the resulting judgment constitutes a part of the subject-matter over which the jurisdiction extends.

" * * * It may be stated, as a general proposition that a judgment is conclusive, not only as to the subject-matter in controversy in the action upon which it is based, but also in all other actions involving the same question, and upon all matters involved in the issues which might have been litigated and decided in the case; the presumption being that all such issues were really met and decided. [Authorities cited.] In Auguisola v. Arnaz, 51 Cal. 435, it was said; '*probate courts have exclusive jurisdiction of the final distribution of the estates of decedents.' And such decree of distribution of an estate, after due notice by the probate court, is conclusive upon a person who might have claimed that a share of the estate belonged to him.* [Cases cited.] [Emphasis supplied.][2]".

6. *The California Probate Court Had Jurisdiction to Try the Appellee's Title to Property of the Estate*

The appellee asserts that the Probate Court was "without jurisdiction to try title to property as between a representative of the estate and a stranger thereto."

 The rule relied upon by the appellee is well settled in California,[3] but simply is not applicable to the case at bar. A woman who claims an "interest in the estate", who refers to herself as one of the "heirs", and who alleges that she is "entitled to receive one-half" of the estate, which "consists of community property only", "by survivorship", and to "retain" the other one-half as the community spouse, can hardly be said to be claiming as a "stranger to the estate". When we consider *jurisdiction*, we are not concerned with the *justice* of the petition, but with its *claims*.

Under California law, "upon the death of either spouse, one-half of the community property belongs to the survivor

1. See also United States v. Des Moines Valley R. Co., 8 Cir., 1897, 84 F. 40, 44–45.

2. See also Reynolds v. Churchill Company, 1921, 187 Cal. 543, 546–547, 202 P. 865; Sacramento & San Joaquin Drainage District v. Superior Court, 1925, 196 Cal. 414, 430, 238 P. 687; Kupfer v. Brawner, 1942, 19 Cal.2d 562, 564, 122 P.2d 268; In re Estate of Loring, 1946, 29 C.2d 423, 427–428, 175 P.2d 524; 21 Cal.Jur.2d § 861, page 244.

3. See In re Estate of Dabney, 1951, 37 C. 2d 672, 676–677, 234 P.2d 962; Schlyen v. Schlyen, supra, 43 Cal.2d at page 372, 273 P.2d 897; but cf. In re Estate of Riccomi, 185 Cal. 458, 463–464, 197 P. 97, 14 A.L.R. 509.

and the other half is subject to the testamentary disposition of the decedent. In the absence thereof it goes to the survivor, subject to certain provisions relating to administration of estates, including control and disposition of community property by the husband upon the death of the wife, * * *." 10 Cal. Jur.2d § 62, page 737.

A commentator in The Stanford Law Review of April, 1952, Volume 4, Number 3, page 443, in discussing "the wife's interest in the community property prior to the husband's death", observed:

"Of even greater persuasiveness is the fact that the California legislature has regarded the wife as having such an interest in community property that the entire estate should not be subjected to the California inheritance tax." [4]

Assuredly, this is not language applicable to "a stranger to the estate"!

### 7. *"Allowance of Expenses of Defense"*

A supplemental transcript of record and an "Opening Brief of Appellants" have been filed on the "Allowance of Expenses of Defense". In the latter, the appellant Robison asks that he "be awarded all his necessary expenses incurred to defend any assets in his possession," etc.

Robison concedes, however, that "If the judgment is reversed and defendant W. A. Robison as said administrator wins a final judgment in the federal District Court no problem as to the awarding of expenses of defense will ever arise in that Court or in this Court because they will be awarded out of the probate assets being administered by the San Francisco Probate Court". In view of the appellant's concession and in view of the fact that we are deciding his appeal in his favor, there is no need for us to pass upon the question raised by the appellant.

### 8. *Conclusion*

We hold that the Probate side of the Superior Court of the City and County of San Francisco had jurisdiction to try the appellee's title to the property in her former husband's estate, and the "Decree" of that Court "Establishing Heirship" is *res judicata* in the instant case.

Accordingly, the judgment of the Court below, undertaking to find in favor of the appellee on an issue that had already been adjudicated by the State court—namely, the appellee's rights in Robert Sidebotham's estate—is

Reversed.

---

4. See also California's Probate Code, §§ 201, 201.5, and 202; and California's Revenue and Taxation Code, § 13551.